**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
Jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Plaintiff,
*Rafael David Sherman*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RAFAEL DAVID SHERMAN, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**YAHOO! INC., a Delaware Corporation,**<br><br>Defendant. | Case No: 13-CV-00041-GPC (WVG)<br><br>**PLAINTIFF RAFAEL DAVID SHERMAN'S OPPOSITION TO DEFENDANT YAHOO! INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date**:  September 27, 2013<br>**Time**: 1:30 p.m.<br>**Ctrm**: 2D<br><br>**Judge**: Hon. Gonzalo P. Curiel |

*Kazerouni Law Group, APC*
*Costa Mesa, California*

**Kazerouni Law Group, APC**
Costa Mesa, California

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     THE TELEPHONE CONSUMER PROTECTION ACT .........................1

III.    STATEMENT OF FACTS ............................................................2

IV.     LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT....4

V.      DEFENDANT INCORRECTLY ARGUES THAT THIS LAWSUIT IS
        A LAWYER- DRIVEN STRIKE SUIT ............................................4

VI.     THE AUTOMATED TEXT MESSAGE SENT TO PLAINTIFF
        BY YAHOO IS EXACTLY THE TYPE OD UNWANTED TEXT
        MESSAGE PROHIBITED BY THE TCPA ....................................5

        A.    Yahoo Mischaracterizes Its Spam Text Message As A
              "Confirmatory" Text Message ........................................5

              1.    The *Ibey v. Taco Bell* decision relied upon by Defendant
                    was wrongly decided and is factually distinguishable ..........8

              2.    *Emanuel* was wrongly decided and is on appeal ..................9

        B.    Yahoo May Not Introduce Evidence Of Congressional Intent
              And Legislative History Where, As Here, The Relevant Section
              Of The TCPA Is Unambiguous ......................................9

              1.    Section 47 U.S.C. § 227(b)(1)(A) is content-neutral............11

              2.    The sole purpose of the text message was not to provide
                    opt-out instructions ..............................................12

              3.    A single automated text message violates the TCPA
                    without prior express consent, contrary to Yahoo's
                    argument that only "bulk communications"
                    are prohibited..................................................13

        C.    Yahoo's Notification Text Message Was Unsolicited
              By Plaintiff..................................................13

**Kazerouni Law Group, APC**
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.   THE EQUIPMENT USED BY YAHOO CONSTITUTES AN "AUTOMATIC TELEPHONE DIALING SYSTEM"** ............................14

   **A.   The Undisputed Facts Demonstrate That Yahoo's Equipment Has The Requisite "Capacity" To Be An ATDS** .........14

   **B.   Alternatively, The Undisputed Facts Demonstrate At Least A Genuine Dispute As To Whether Yahoo's Equipment Has The Requisite "Capacity" To Be An ATDS** .............................17

**VIII. SECTION 47 U.S.C. § 2309(c)(2)(B) DOES NOT IMMUNIZE YAHOO FROM LIABILITY FOR ITS UNSOLICITED TEXT MESSAGES REGULATED BY THE TCPA** ..............................19

   **A.   Telecommunications Act of 1996** ................................19

   **B.   Section 47 U.S.C. § 230(c)(2)(D) Does Not Apply To Plaintiff Because Plaintiff Is Not Yahoo's Customer** ...................20

   **C.   Yahoo's Notification Text Message Directed Plaintiff To A Webpage For Marketing Purposes** ...................................20

       **1.   Yahoo's notification text message did not contain explicit opt-out instructions** ...................................21

       **2.   Plaintiff would have to go through several steps in order to stop further unwanted text messages from Yahoo** ..........21

       **3.   Yahoo does not actually stop the text message sent by the Yahoo user from being received** ......................22

   **D.   The Telecommunications Act Did Not Create An Exemption For Liability Under The Telephone Consumer Protection Act** .....22

   **E.   Yahoo's Case Law Does Not Support Application Of The "Good Samaritan" Exemption For Calls Regulated By The TCPA** ...................................................................23

       **1.   *Zango*** ................................................................23

       **2.   *Pallorium*** ..........................................................24

1

2         **3.**    *Holomaxx* ............................................................................24

3

4     **F.**   **Yahoo Should Not Be Allowed To Avoid TCPA Liability For Its Unsolicited Commercial Text Message** ......................................25

5 **IX.**   **CONCLUSION** ..........................................................................25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kazerouni Law Group, APC**
Costa Mesa, California

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242
(1986) ...................................................................................................... 4

*Andrus v. Glover Constr. Co.*,
446 U.S. 608
(1980) .................................................................................................... 22

*Barnes v. Yahoo! Inc.*,
570 F.3d 1096
(9th Cir. 2009) ..................................................................................... 25

*Bazuaye v. INS*,
79 F.3d 118
(9th Cir. 1996) ..................................................................................... 11

*BedRoc Ltd., LLC v. United States*,
541 U.S 176
(2004) .................................................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317
(1986) ...................................................................................................... 4

*Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913
(9th Cir. Wash. 2012) ......................................................................... 13

*Czech v. Wall St. on Demand, Inc.*,
674 F. Supp. 2d 1102
(D. Minn. 2009) ..................................................................................... 1

*Emanuel v. L.A. Lakers, Inc.*,
2013 U.S. Dist. LEXIS 58842
(C.D. Cal. Apr. 18, 2013) .................................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*///*

**Kazerouni Law Group, APC**
Costa Mesa, California

*Golden West Fin. V. WMA Mortgage Servs., Inc.*,
  2003 WL 1343019
  (N.D. Cal. March 13, 2003)................................................................11

*Gragg v. Orange Cab Co.*,
  2013 U.S. Dist. LEXIS 60174
  (W.D. Wash. Apr. 26, 2013) ............................................................15

*Holomaxx Techs. V. Microsoft Corp.*,
  783 F.Supp.2d 1097
  (N.D. Cal. 2011) ...............................................................................25

*Horner v. Andrzjewski*,
  811 F.2d 571
  (Fed. Cir. 1987) ................................................................................22

*Hunt v. City of Los Angeles*,
  638 F.3d 703
  (9th Cir. 2011) ....................................................................................4

*Hylkema v. Rentcollect Corp.*,
  2006 WL 2819357
  (W.D. Wash. Sept. 28, 2006) ...........................................................23

*Ibey v. Taco Bell Corp.*,
  2012 U.S. Dist. LEXIS 91030
  (S.D. Cal. June 18, 2012) ..............................................................8, 9

*Iniguez v. CBE Group, Inc.*,
  Case No.: 2:13-cv-00843-JAM-AC
  (E.D. Cal. Sept. 5, 2013) ...........................5, 8, 10, 11, 12, 14

*In re Jiffy Lube Int'l. Inc., Text Spam Litigation*,
  847 F. Supp. 2d 1253
  (S.D. Cal. 2012)..........................................................................11, 14

*Kazemi v. Payless Shoesource, Inc.*,
  2010 WL 963225
  (N.D. Cal. Mar. 16, 2010) .................................................................2

*///*

Kazerouni Law Group, APC
Costa Mesa, California

*Knutson et al. v. Schwan's Home Service, Inc., et al.,*
  Case No.: 3:12-cv-00964-GPC-DHB
  (S.D. Cal. Sept. 5, 2013)....................................................................1, 2

*Melingonis v. Network Communs. Int'l Corp.,*
  2010 U.S. Dist. LEXIS 125348
  (S.D. Cal. Nov. 29, 2010)......................................................................11

*Meyer v. Portfolio Recovery Assocs., LLC,*
  707 F.3d 1036
  (9th Cir. 2012) .................................................................................12, 14

*Mims v. Arrow Fin. Servs. LLC,*
  132 S. Ct. 740
  (U.S. 2012) .............................................................................................1

*Moser v. F.C.C.,*
  46 F.3d 970
  (9th Cir. 1995) .................................................................................2, 11

*Nelson v. Santander Consumer United States,*
  2013 U.S. Dist. LEXIS 40799
  (W.D. Wisc. March 8, 2013) ....................................................15, 17, 18

*Pallorium v. Stephen J. Jared,*
  2007 WL 80955
  (Cal. App. Ct. Jan. 11, 2007).................................................................24

*Satterfield v. Simon & Schuster, Inc.,*
  569 F.3d 946
  (9th Cir. Cal. 2009)........................................................................passim

*St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,*
  2007 U.S. Dist. LEXIS 11650
  (W.D. Wash. Feb. 16, 2007)....................................................................1

*Zango Inc. v. Kaspersky Lab, Inc.,*
  568 F.3d 1169
  (9th Cir. 2009) ......................................................................................23

///

**Statutes**

47 U.S.C. § 230 *et seq.* ........................................................................23

47 U.S.C. § 230(b)(1)-(5) ......................................................................25

47 U.S.C. § 230(c)(2) ............................................................................19

47 U.S.C. § 230(c)(2)(B) .......................................................................19

47 U.S.C. § 230(c)(2)(D) .......................................................................20

47 U.S.C. § 230(d) .................................................................................20

47 U.S.C. § 230(f)(2) ......................................................................19, 23

47 U.S.C. § 230(f)(4) .............................................................................23

47 U.S.C. § 230(f)(4)(A) ........................................................................23

47 U.S.C. § 227 *et. seq.* ..........................................................................1

47 U.S.C. § 227(a)(1) .........................................................................2, 14

47 U.S.C. § 227(b)(1) ...............................................................................2

47 U.S.C. § 227(b)(1)(A) ...................................................1, 2, 8, 11, 12, 22

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................2, 10, 11

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................4

Fed. R. Civ. P. 56(e) ................................................................................4

**Other**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 F.C.C.R. 14014
(2003) ...................................................................................................15

*In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
23 F.C.C.R. 559
(2008) ...................................................................................................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kazerouni Law Group, APC**
Costa Mesa, California

*In The Matter of Rules and Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991,*
    73 Fed. Reg. 6041
    (2008) ................................................................................................................15

*In Re Matter of Rules and Regulations Implementing The Telephone Consumer*
    *Protection Act of 1991,*
    27 F.C.C.R. 15391
    (2012) ..................................................................................................5, 7, 8, 9

Kazerouni Law Group, APC
Costa Mesa, California

## I.     INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") is "aimed at protecting recipients from the intrusion of receiving unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007). Indeed, the U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012); *see also Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106 (D. Minn. 2009) ("this Court does not disagree that unwanted text messages, like spam e-mail, are an annoyance").

In the present action, Yahoo's Motion for Summary Judgment provides no basis for granting summary judgment in Yahoo's favor. All three grounds raised by Yahoo fail, since § 227(b)(1)(A) applies to "any call" with an automatic telephone dialing system ("ATDS") without prior express consent; the equipment used by Yahoo to call Plaintiff's cell phone constitutes an ATDS (or at the very least there is a genuine dispute over that material fact), and Yahoo is not immune from liability by reliance on the Telecommunications Act.

## II.     THE TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America, as the TCPA combats the threat to privacy being caused by the automated practices, stating it is unlawful:

> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system** or an artificial or prerecorded voice—. . .

> (iii) **to any telephone number assigned to a** paging service, **cellular telephone service** …

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The TCPA applies with equal

force to the making of text message calls as it does to the making of voice calls to cellular phones. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009). The TCPA's prohibition at issue requires the calls to be made with ATDS, which Congress defines as "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

To show a TCPA violation Plaintiff need only plead facts that Yahoo (1) sent a text message without the prior express consent of the called party; (2) using an automatic telephone dialing system; (3) to any telephone number assigned to a cellular telephone service. *Satterfield, supra,* 569 F.3d at 950 (citing 47 U.S.C. § 227(b)(1)(A)(iii)); *see also Kazemi v. Payless Shoesource, Inc.*, 2010 WL 963225, *2 (N.D. Cal. Mar. 16, 2010). Section § 227(b)(1) of the TCPA expressly applies to "any call" (regardless of content[1]) made using ATDS. 47 U.S.C. § 227(b)(1). The Ninth Circuit has held that this section of the TCPA should be analyzed as a content-neutral regulation. *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995). A single automated text message violates that TCPA. *Satterfield*, *supra*, 569 F.3d at 956

## III.    STATEMENT OF FACTS

Plaintiff is not a Yahoo customer. (Declaration of Rafael David Sherman, ("Sherman Decl."), ¶ 10). Plaintiff has never sent a text message to Yahoo (*id.* at ¶ 8; Declaration of Randall Snyder ("Synder Decl."), ¶ 43), nor had Plaintiff ever received a text message from Yahoo at that number on his cell phone prior to that time (Sherman Decl., ¶¶ 9 and 11). On January 7, 2013, Yahoo sent two unsolicited text messages to Plaintiff's cell phone. (Sherman Decl., at ¶¶ 4-7). The first text message (i.e., the "notification text"), which is the text message at issue in this case,[2]

---

[1] *See Knutson et al. v. Schwan's Home Service, Inc. et al.*, Case 3:12-cv-00964-GPC-DHB, Dkt. No. 99, p. 12, n.2 (S.D. Cal. Sept. 5, 2013) [Ex. D to Kazerounian Decl.].
[2] Sherman Decl., at ¶ 5; Exhibit 3 to Deposition Transcritp for Nitu Choudhary ("Choudhary Depo.," which Transcript is attached as Exhibit C to the Declaration of Abbas Kazerounian ("Kazerounian Decl.")); Def.'s Response to RFA No. 19

Kazerouni Law Group, APC
Costa Mesa, California

was drafted by Yahoo (Choudhary Depo., at 44:16-45:20), and directed Plaintiff to Yahoo's website (Exhibit 3 to Choudhary Depo.). The notification text message did not contain explicit opt-out instructions in the actual message. Choudhary Depo., 82:14-84:19; *see also* Snyder Decl. ¶¶ 40-41. The second text message was drafted by a Yahoo user. *Id*. at 50:25-51:13; Exhibit 3 thereto; *see also* Sherman Decl., ¶ 6.

The unsolicited notification text message from Yahoo to Plaintiff was sent automatically (Choudhary Depo., 55:15-56:5; Choudhary Decl., ¶ 8, lns. 13-14 (Dkt. No. 9-2)), and without human intervention (*id*. at 58:9-15; Synder Decl., ¶ 73), through Yahoo's PC2SMS service. It is undisputed that Yahoo's PC2SMS service has the "capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers." Snyder Decl., ¶¶ 8, 74. Yahoo's servers stored Plaintiff's telephone number after the Yahoo user initiated a text message to Plaintiff. Snyder Decl., ¶ 39; Choudhary Depo., 59:15-21. Yahoo's PC2SMS service sends both the notification text message and a text message initiated by a Yahoo user at the same time (Choudhary Depo., 50:8-24), unless the recipient has once before received a notification text message from yahoo, in which case the notification message is not sent (*id*. at 52:5-25; Snyder Decl., ¶ 36). Yahoo cannot guarantee that the notification text message will be received before the text message from a Yahoo user, and in this case it was not. *Id*. at 50:8-24.

There are two ways to opt-out of receiving further text messages from Yahoo (Snyder Decl., ¶ 41), which include a series of text messages between Yahoo and the recipient (*id*.), or the recipient can go to Yahoo's webpage by following the link in the notification text message (*id.; see* Exhibit D, Bates No. YAHOO085). The webpage solicits Yahoo's services, and in very tiny language displays the word "Help." Choudhary Depo., 91:15-92:5; Exhibit 5 thereto.

///

___

(Exhibit B to Kazerounian Decl.).

Kazerouni Law Group, APC
Costa Mesa, California

## IV. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c), (e). When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir., 2011).

## V. DEFENDANT INCORRECTLY ARGUES THAT THIS LAWSUIT IS A LAWYER-DRIVEN STRIKE SUIT

Yahoo begins its Motion for Summary Judgment by making the bold and incorrect assertion that this TCPA action is a "lawyer-driven strike suit, based on a contrived claim." (Def.'s Memo., 1:4-5). This is completely irrelevant to the legal issues in this case, and Plaintiff will not indulge Defendant or Defendant's attorneys in such antics and choses instead to concentrate on the legal issues before the Court.

## VI. THE AUTOMATED TEXT MESSAGE SENT TO PLAINTIFF BY YAHOO IS EXACTLY THE TYPE OF UNWANTED TEXT MESSAGE PROHIBITED BY THE TCPA

Yahoo's argument that its text message to Plaintiff is "not … the kind of message the TCPA aims to prevent" (Def.'s Memo., 1:11-12), is meritless for at least three reasons. First, Yahoo mischaracterizes the text message as a "confirmatory" text message in a futile attempt to bring the text message under the recent exemption created by the FCC for a text message that confirms a

Kazerouni Law Group, APC
Costa Mesa, California

consumer's opt-out request. Second, Yahoo may not properly rely upon evidence of Congressional intent and legislative history to argue that only "Unsolicited Automated Telemarketing and Bulk Communications" are prohibited, which in any event, is incorrect. Third, Defendant fails to acknowledge that its notification text message was completely unsolicited by Plaintiff. The *Iniguez* Court recently stated that:

> … the TCPA is clear that it applies to any call made to a cellular telephone. … In accordance with this position, the federal regulations applicable to the TCPA do not contain … any exceptions related to calls made to cellular phones.

*Iniguez v. CBE Group, Inc.*, Case No., 2:13-cv-00843-JAM-AC, Dkt. No. 30, 10:6-13 (E.D. Cal. Sept. 5, 2013) [Exhibit E to Kazerounian Decl.] (emphasis added).

### A. Yahoo Mischaracterizes Its Spam Text Message As A "Confirmatory" Text Message

According to the FCC, the agency that regulates calls under the TCPA, a "confirmatory" text message is one that "**confirm[s] receipt of that subscriber's request to optout of receiving future text messages**." *In re Matter of Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 15391 (2012) ("2012 FCC Declaratory Ruling") (emphasis added). Indeed, the FCC recently issued this 7-page Declaratory Ruling explaining the permissibility of a single confirmatory text message under the TCPA, stating, "[o]ur ruling will allow organizations that send text messages to consumers from whom they have obtained prior express consent to continue the practice of sending a final, **one-time text to confirm receipt of a consumer's optout request**." *Id.* (emphasis added.)

At no point in the Complaint does Plaintiff refer to the text message as a "confirmatory" text message. Defendant mischaracterizes its SPAM text message at issue in this case by calling it a "confirmatory" text message (Def.'s Memo., p. 5, ln. 10), hoping to escaping liability for its unsolicited commercial text message

by improperly applying the 2012 FCC Declaratory Ruling. Unlike the notification text message sent by Defendant here, a confirmatory text confirms a consumer's decision to opt-out of further text messages by sending instructions such as "STOP" (*see* 2012 FCC Declaratory Ruling, n. 11), in a reply text message. The notification did not provide Plaintiff with explicit opt-out instructions.

Assuming, *arguendo*, that the purpose of the text message was to confirm an opt-out request from Plaintiff – which was clearly not the case here – a confirmatory text message is only permitted where the recipient (i.e., Plaintiff) has provided the caller (i.e., Yahoo) with prior express consent to send text messages in the first place. Here, Yahoo sent two unsolicited text messages to Plaintiff's cell phone on January 7, 2013. (Choudhary Depo., 50:8-12; 53:15-18; Sherman Decl., ¶¶ 4-6). The first was the notification text message, which was drafted by Yahoo (Choudhary Depo., at 44:16-45:20), stated:

> A Yahoo! user has sent you a message.  Reply to that SMS to respond.  Reply INFO to this SMS for help or go to y.ahoo.it/imsms.

(Choudhary Depo., 44:13-15; Sherman Decl., ¶ 5).

The second text message, which was drafted by a Yahoo user (*id.* at 50:25-51:13; Exhibit 3 thereto), stated, "hey get online i have to talk to you" (Sherman Decl., ¶ 6). Since the notification text message was received by Plaintiff before the text message from the Yahoo user, the notification text message was not confirming anything, nor could it have confirmed anything because it was the first communication to Plaintiff from Yahoo using the PC2SMS Service. (*See* Choudhary Depo., 73:3-17, 75:19-24, 81:8-13, 101:12-21; Sherman Decl., ¶¶ 9, 11). Plaintiff did not send an opt-out text message to Yahoo in response to the unsolicited notification text message (Sherman Decl., ¶ 13), nor did the face of Yahoo's text message indicate how Plaintiff could opt-out of receiving further text messages from Yahoo (Choudhary Depo., 82:14-84:19). Significantly, Plaintiff is not a Yahoo

Kazerouni Law Group, APC
Costa Mesa, California

subscriber (Sherman Decl., ¶ 10; *see also id.* at ¶ 8), as required by the 2012 FCC Declaratory Ruling (a confirmatory text "confirm[s] receipt of that <u>subscriber's</u> request to opt out of receiving future text messages." 2012 FCC Declaratory Ruling, 27 F.C.C.R. at 15391.

When Yahoo's representative was asked why its text message was characterized as a "confirmatory" text message, Ms. Choudhary stated:

> For me it is letting the user to know that somebody from Yahoo! is trying to send him a message and if he wants to -- if he wants to keep on receiving more messages, he needs to reply back so that Yahoo! can -- so that he can -- he can use Yahoo! to talk back to the Yahoo! user.  That is what the message means for me.

Choudhary Depo., 67:2-7.[3]  Thus, Yahoo's text message was not confirming anything, but rather informing or notifying Plaintiff that a Yahoo user sent him a text message (i.e., the text message received by Plaintiff after Yahoo's text message was received) and that Plaintiff needed to text Yahoo back in order to receive more messages. Even if the text message initiated by the Yahoo user had been received by Plaintiff before Yahoo's unsolicited notification text message, it still would not make sense for Yahoo to characterize its text message as confirming the previous text message, as Plaintiff would have already known that Plaintiff had received the text message from a Yahoo user.

Thus, the text message sent by Yahoo was exactly the type of text message prohibited by the TCPA because it was unsolicited and sent via an ATDS. *See* FAC, ¶¶ 19, 24-27; 47 U.S.C. § 227(b)(1)(A). The text message not a "confirmatory" text message under the 2012 FCC Declaratory Ruling, and Yahoo's tactical decision to call it such does not make it so.[4]

---

[3] *See* Choudhary Depo., 73:22-24 ("the confirmatory message means that someone at Yahoo! Is trying to send a message."); *see also id.* at 74:4-6 ("But for me it is like the Yahoo! user is sending him a message and that is what we are trying to confirm.").

[4] Notably, "<u>the statute does not permit the FCC to make similar exceptions for calls made to wireless numbers</u>." *Iniguez*, *supra*, at p. 8:18-25. Thus, even if the text messages at issue here were true confirmatory text messages, the FCC did not have

Kazerouni Law Group, APC
Costa Mesa, California

**1.    The *Ibey v. Taco Bell* decision relied upon by Defendant was wrongly decided and is factually distinguishable**

In *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030 (S.D. Cal. June 18, 2012), the Court incorrectly held that the text message at issue in that case (i.e., a true confirmatory text message confirming the consumer's opt-out request after having voluntarily sent a text message to Taco Bell for the purposes of completing a survey) was not actionable because it was not *actually* sent randomly or be sequentially dialed. Such holding directly contradicts Ninth Circuit authority in *Satterfield* which squarely placed the focus on whether the equipment has the mere *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator. *See Satterfield*, *supra*, 569 F.3d at 951.

Additionally, the *Ibey* Court incorrectly resorted to evidence of statutory intent and legislative history introduced by the defendant when the Ninth Circuit had held in *Satterfield* that the relevant section of the TCPA is clear and unambiguous. *See* Section VI (A)(1), *infra*.

Yahoo here sent the unsolicited notification text message at issue to Plaintiff's cell phone without any prior text messages from Plaintiff. Sherman Decl., ¶¶ 8, 12. The notification text message is only sent once, i.e., the first time someone sends a text message to the recipient's cell phone using the PC2SMS Service. (*See* Choudhary Decl., p. 2, ¶ 8 (Dkt. No. 9-2)). Yahoo was not confirming an opt-out request because Plaintiff had not sent Yahoo an opt-out request (as explained above), nor any communication for that matter by text message. Sherman Decl., ¶¶ 9 and 11. In fact, Yahoo did not even provide explicit instructions in its text message for opting-out of further unsolicited text messages from Yahoo. The text message here was completely unsolicited by Plaintiff. *Id.* at ¶ 12. Yahoo used this opportunity to conduct unsolicited telemarketing to Plaintiff by including a link to its website where

authority to create an exemption for confirmatory text messages to cellular telephone numbers.

Kazerouni Law Group, APC
Costa Mesa, California

Plaintiff was invited to sign up for Yahoo Instant Messenger and purchase services from Yahoo. *See* Choudhary Depo., 89:16-92:14; Exhibit 5 thereto. Therefore, the Court should not follow the decision in *Ibey v. Taco Bell*.

### 2.     *Emanuel* was wrongly decided and is on appeal

Plaintiff anticipates that Yahoo may cite to the decision in *Emanuel v. L.A. Lakers, Inc.*, 2013 U.S. Dist. LEXIS 58842 (C.D. Cal. Apr. 18, 2013) in their reply brief to support its proposition that the notification text message was a "confirmatory" text message, such reliance would be misplaced. However, not only did the court in *Emanuel* rely heavily on the flawed holding in *Ibey v. Taco Bell*, but the *Emanuel* Court also incorrectly found that the text message from the Los Angeles Lakers was a "confirmatory" text message even though it was not sent in response to an opt-out request. Such finding clearly flies in the face of the 2012 FCC Declaratory Ruling, 27 F.C.C.R. at 15391. Also, in *Emanuel*, the plaintiff sent the first text message to the Los Angeles Lakers, unlike the present case where Yahoo sent the first (and unsolicited) text message to Plaintiff. Lastly, the *Emanuel* decision is on appeal (Docket No. 13-55678). Therefore, Yahoo's anticipated reliance on *Emanuel* would be misplaced.

### B.     Yahoo May Not Introduce Evidence Of Congressional Intent And Legislative History Where, As Here, The Relevant Section Of The TCPA Is Unambiguous

In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. Cal. 2009), the Ninth Circuit analyzed the relevant section of the TCPA and explained:

> our inquiry begins with the statutory text, and ends there as well if the text is unambiguous. *Id.* (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) (internal quotation marks omitted)). **Reviewing this statute, we conclude that the statutory text is clear and unambiguous.**

*Satterfield*, 569 F.3d at 951 (emphasis added).

*Kazerouni Law Group, APC*
*Costa Mesa, California*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kazerouni Law Group, APC
Costa Mesa, California

1    Here, Yahoo introduces what appears to be evidence of Congressional intent

2    and legislative history of the TCPA without so much as arguing that the statutory text

3    of the TCPA is ambiguous in any manner, which is a threshold requirement.  In fact,

4    in *Satterfield*, the Ninth Circuit unquestionably held that the relevant section of the

5    TCPA is unambiguous on its face. *Id.* First, Yahoo argues that "[t]he statute

6    legislative history focus on unsolicited telemarketing." Def.'s Memo., 7:16-17.

7    Second, Yahoo argues that "[s]ending a single informational text message in

8    conjunction with a personal message, where the personal message is sent by a user

9    who specifically selected the recipient, does not amount to the kind of invasion of

10   privacy Congress was trying to prevent." *Id.* at 8:18-21. However, the statutory text

11   on its face prohibits any call (regardless of content, *Knutson*, *supra*, *at.* p. 12, n.2) to a

12   cell phone. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13   Because the relevant section of the TCPA is unambiguous – and Yahoo cannot

14   credibly claim that the phrase "any call" is ambiguous – Yahoo's reliance on

15   legislative history and Congressional intent is improper. *See Iniguez*, *supra*, at 10:6-7

16   (court held that "the TCPA is clear that it applies to any call made to a cellular

17   telephone" where the defendant made an argument based upon legislative history and

18   the plaintiff correctly responded that the legislative history was irrelevant absent any

19   ambiguity in the statutory text of the TCPA) (emphasis added) [Pl.'s Exhibit E].

20   Thus, the Court may not consider evidence of legislative history or

21   Congressional intent regarding the TCPA in ruling on Defendant's Motion for

22   Summary Judgment. Should Defendant argue for the first time its Reply that the

23   TCPA is ambiguous, Plaintiff objects to such tactic as a violation of Plaintiff's right

24   to procedural due process, since arguments raised for the first time in reply brief are

25   waived. *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996); *Golden West Fin. V.*

26   *WMA Mortgage Servs., Inc.*, 2003 WL 1343019, *4 (N.D. Cal. March 13, 2003).

27   ///

28   ///

Kazerouni Law Group, APC
Costa Mesa, California

### 1.   Section 47 U.S.C. § 227(b)(1)(A) is content-neutral

Yahoo argues that "[t]he purpose of the TCPA is to prevent unsolicited automated telemarketing." (Def. Memo., 1:19-20). However, the TCPA permissibly actually proscribes use of autodialed text messages regardless of their content because § 227(b)(1)(A) is content-neutral. In *Melingonis v. Network Communs. Int'l Corp.,* 2010 U.S. Dist. LEXIS 125348 (S.D. Cal. Nov. 29, 2010), the Court stated, "[w]e note that this prohibition applies <u>regardless of the content of the call</u>, and <u>is not limited only to calls that constitute 'telephone solicitations.'</u>" *Id.* at *4 (emphasis added). In fact, this Court held on September 5, 2013 that "Section 227(b)(1)(A)(iii), however, does not make [] a distinction" between the type of calls, whether courtesy calls, unwanted telemarketing calls, or otherwise. *See Kuntson, supra*, p. 12, n. 2.

While Congress may have been motivated in part to prohibit unwanted telemarketing calls, Congress drafted the TCPA to be content-neutral, and the text of the Statute was Congress' final word on the matter. *See* 47 U.S.C. § 227(b)(1)(A). The relevant section of the TCPA "provides for liability of 'any call … 'using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a … cellular telephone service.'" *Iniguez*, *supra*, at p. 7 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). Further, "[t]he only statutory exceptions to the wireless number prohibition are calls made for emergency purposes or with the prior consent of the call recipient. 47 U.S.C. § 227(b)(1)(A)." *Iniguez*, *supra*, at 9:5-8.[5] Again, since the statutory language is unambiguous on its face (the prohibition applies to "any call"), Yahoo's argument is incorrect.

### 2.   The sole purpose of the text message was not to provide opt-out instructions

Moreover, Yahoo argues that "[t]he sole purpose of the … message is to provide a link to a help page that includes instructions on how to opt-out of receiving

---

[5] Section 227(b)(1)(A) does not "permit any regulatory agency to make exceptions to the sections applicable to cellular numbers." *Iniguez*, *supra*, at p. 10:8-10.

Yahoo! Messenger messages via text in the future." (Def.'s Memo., 1:7-9). However, there is no explicit opt-out instruction in Yahoo's text message. Choudhary Depo., 82:14-84:19. Indeed, the recipient would have to follow the web link to Yahoo's webpage, click on the "help" link in extremely tiny font (*see* Choudhary Depo., 91:15-92:5; Exhibit 5 thereto), and then follow other instructions in order to opt-out of further unwanted text messages from Yahoo.[6] Therefore, it is completely disingenuous for Yahoo to make such argument, which is ultimately irrelevant because the purpose of the call or text message does not matter unless it is for "emergency purposes" (47 U.S.C. § 227(b)(1)(A)), which is clearly not the case here and Yahoo does not even argue as much. Consequently, Yahoo is incorrect that the unsolicited text message at issue was "not … the kind of message the TCPA aims to prevent" (Def.'s Memo., 1:11-12), for *any* text message sent using an ATDS without prior express consent is prohibited by the express text of the TCPA.

Even assuming, *arguendo*, that the Court agrees with Defendant that the text must constitute an invasion of privacy, it is difficult to believe that an unsolicited automated text message to a non-Yahoo customer for marketing purposes could not be deemed an invasion of privacy. *See Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1045 (9th Cir. May 10, 2012) ("Prohibiting the use of automatic dialers to call cellular telephones without express prior consent is a rational means of achieving [Congress'] objective.") (emphasis added).

Thus, Yahoo's argument that that its text message is not actionable because it was a "notification message" (Def.'s Memo., 4:5 and 11:18) is wholly without merit.

### 3. A Single Automated Text Message Violates The TCPA without Prior Express Consent, Contrary To Yahoo's Argument That Only "Bulk Communications" Are Prohibited

Yahoo also argues that "[t]he purpose of the TCPA is to prevent … bulk communications." Def. Memo., 1:19-20. This is incorrect, as confirmed by the Ninth

---

[6] A second method to opt-out is explained in Section VIII(C)(1-2), *infra*. Plaintiff incorporates by reference the analysis in that Section.

Kazerouni Law Group, APC
Costa Mesa, California

Circuit in *Satterfield* were a single unsolicited text message violated the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. Cal. 2009); *see also Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. Wash. 2012) (Ninth Circuit found a single call without prior express consent (i.e., a call after the plaintiff's had opted-out of receiving further calls) violated the TCPA.

### C.   Yahoo's Notification Text Message Was Unsolicited By Plaintiff

Yahoo refuses to recognize that the undisputed evidence shows the notification text message from Yahoo was completely unsolicited by Plaintiff. (*See* Choudhary Decl., p. 2, ¶ 8 (Dkt. No. 9-2; Sherman Decl., ¶¶ 12 and 13)). Instead, Yahoo attempts to avoid liability by arguing that its piggy-backed text message was not improper. Yahoo states: "If, as plaintiff contends, the confirmatory message was unwanted, the message provides the recipient with the tools to opt out of receiving further messages from friends or acquaintances using the Yahoo! SMS Service." (Def.'s Memo., 8:26-28). Yahoo cannot escape liability by claiming that the TCPA does not prohibit its notification text message (i.e., what Yahoo calls a "confirmatory" text message) because Yahoo later on gave Plaintiff the option to opt-out of further unwanted text messages, including the unwanted notification text message from Yahoo.

Consequently, Yahoo's unsolicited notification text message is the exact type of text message prohibited by the TCPA, as the statute prohibits "any call" using an ATDS, as explained above.

## VII.   THE EQUIPMENT USED BY YAHOO CONSTITUTES AN "AUTOMATIC TELEPHONE DIALING SYSTEM"

The Ninth Circuit has determined that the equipment need only have the capacity to constitute an ATDS is a question of fact (*Satterfield*, *supra*, 569 F.3d at 951), not a question of law. The undisputed facts show that Yahoo's equipment is an ATDS under the TCPA. At the very least, the undisputed facts show that there is a genuine dispute as to whether Yahoo's equipment has the requisite capacity to be

Kazerouni Law Group, APC
Costa Mesa, California

an ATDS, which means that Defendant's Motion for Summary Judgment on this ground must be denied. "The Ninth Circuit has confirmed that the statute creates liability based solely on a machine's capacity rather than on whether the capacity is utilized." *In re Jiffy Lube Int'l, Inc.*, *supra*, 847 F. Supp. 2d at 1261.

### A.   The Undisputed Facts Demonstrate That Yahoo's Equipment Has The Requisite "Capacity" To Be An ATDS

According to the plain text of the TCPA, an "automatic telephone dialing system" or "[a]n ATDS is defined as equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. § 227(a)(1).'" *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d at 1256 (internal quotations omitted).

The Ninth Circuit in *Satterfield* held that:

> the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Satterfield*, 569 F.3d at 951.[7] This was confirmed by the Ninth Circuit in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

The FCC explained back in 2003 that the ATDS requirement was to be interpreted broadly to apply to a wide spectrum of evolving technologies, including predictive dialers. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14091-93 (2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will

---

[7] *See also Iniguez*, *supra*, at p. 11, lns. 10-15 ("whether or not Defendant's system randomly generated Plaintiff's number is not determinative because the TCPA only requires that the system have that capability, not that it was actually utilized with respect to a particular phone call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).").

*Kazerouni Law Group, APC*
*Costa Mesa, California*

be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, <u>or from a database of numbers</u>." *Id*. at 14091 (emphasis added). "As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. <u>The basic function of such equipment, however, has not changed — the *capacity* to dial numbers without human intervention</u>." *Id*. at 14092 (emphasis added).

As stated by the *Gragg* Court, an ATDS includes:

> **[E]quipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS**, because the basic function of such dialing equipment is the same—the capacity to dial numbers without human intervention. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. 6041, 6042 (Feb. 1, 2008) ("2008 FCC Clarification").

*Gragg v. Orange Cab Co.*, 2013 U.S. Dist. LEXIS 60174, *4 (W.D. Wash. Apr. 26, 2013) (internal quotations omitted) (emphasis added); *see also Nelson v. Santander Consumer United States*, 2013 U.S. Dist. LEXIS 40799, *27 (W.D. Wisc. March 8, 2013) ("<u>the question is not how the defendant made a particular call, but whether the system it used had **the 'capacity' to make automated calls**</u>") (emphasis added).

Here, Yahoo argues that its equipment "does not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, nor can it dial such numbers." Def.'s Memo., 9:27-10:1. However, Yahoo either misunderstand the definition of an ATDS, or worse, deliberately ignores agency guidance and controlling Ninth Circuit authority.[8]

Yahoo has admitted that it stores Plaintiff's telephone number in a database

---

[8] Tellingly, Yahoo does not inform the Court of the Ninth Circuit's interpretation of an "automatic telephone dialing system" in its motion; instead, Yahoo merely recites the statutory language of an ADTS. *See* Def.'s Memo., p. 9, lns. 22-24. Yahoo's entire ATDS argument is less than one page in length. *See id.* at 9:10-10:6.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC

Costa Mesa, California

(Choudhary Depo., 97:21-22; *see also* 41:4-14),[9] and that the notification message was "automatically generated"[10] and sent (Choudhary Depo., 55:15-56:5; Choudhary Decl., ¶ 8, lns. 13-14 (Dkt. No. 9-2)) by Yahoo's system without "human intervention" (*id*. at 58:9-15; Synder Decl., ¶ 73). This is sufficient to demonstrate Yahoo's system has the requisite "capacity' to be an ATDS. *See* 2003 FCC Order, 18 F.C.C.R. at 14092 (confirming that the ATDS requirement was to be interpreted broadly to apply to a wide spectrum of evolving technologies, including technology that is used to dial "lists" or "databases" of numbers, since such technology has the basic functional "capacity to dial numbers without human intervention."). Therefore, not only does Yahoo's system have the requisite capacity to be an ATDS (as explained below), it actually *stored* Plaintiff's cell phone number in a database and then *called* it *without human intervention* by sending two consecutive text messages to Plaintiff (i.e., Yahoo's notification text and then the text from the Yahoo user).[11]

Importantly, Plaintiff's technology consultant, Randall A. Snyder, who was the expert in the *Satterfield* case, has concluded based on his expertise[12] and available information, that the equipment used by Defendant is an ATDS under the TCPA. *See* Synder Decl., ¶ 8. "The equipment used by the Defendants has the capacity to store or produce cellular telephone numbers to be called, using a

---

[9] *See* Choudhary Decl., p. 2, ¶ 8 (Dkt. No. 9-2) (the telephone numbers called are stored by Yahoo in order for Yahoo to determine whether or not to send a notificaiton message in the future); *see also* Synder Decl., ¶ 71.

[10] *See* Def.'s Response to Interrogatory No. 5 (Exhibit A to Declaration of Abbas Kazerounian ("Kazerounian Decl.")).

[11] While Yahoo may argue that the two text messages were sent to Plaintiff's cell phone at the same time (*see* Choudhary Depo., 50:13-19), the fact is that in this instance, the notification text message from Yahoo was received first by Plaintiff, followed by the text message drafted by a Yahoo user. *Id*. at 81:8-82:13; see also Snyder Decl., ¶ 43.

[12] Mr. Snyder has testified in over 59 cases regarding telecommunications technology, including 40 cases regarding short message script ("SMS") technology and 21 cases regarding the TCPA and related regulations. Snyder Decl., ¶ 4.

random or sequential number generator, or from a list of telephone numbers." *Id*. at ¶ 74. "The equipment used by the Defendants has the capacity to dial cellular telephone numbers without human intervention" (*id*. at 76) and actually does "dial cellular telephone numbers without human intervention" (*id*. at ¶ 77). "Therefore, I conclude that the equipment used by the Defendants fulfills the definition of an ATDS within the TCPA." *Id*. at ¶ 78. *See Nelson supra*, 2013 U.S. Dist. LEXIS 40799 at *27 ("Because it is undisputed that Nightengale's testimony establishes that capacity, I conclude that plaintiff is entitled to summary judgment…").

**B.      Alternatively, The Undisputed Facts Demonstrate At Least A Genuine Dispute As To Whether Yahoo's Equipment Has The Requisite "Capacity" To Be An ATDS**

In *Satterfield*, the Ninth Circuit denied a defendant's motion for summary judgment on the ATDS issue because the conflicting testimony (*including expert testimony from Mr. Snyder*) raised an issue of material fact, holding:

> **Reviewing the record, we find that there is a genuine issue of material fact with regard to whether this equipment has the requisite capacity.** Satterfield's expert, Randall A. Snyder, opined that this <u>telephone system 'stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention . . . [t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction . . . .</u>

*Satterfield*, *supra*, 569 F.3d at 951.

Yahoo's argument that its text message was "not randomly or sequentially generated" (Def.'s Memo., p. 10, ln. 5) misses the mark, as the telephone number need not be "randomly or sequentially generated," where as here the equipment used by Yahoo has the "capacity" (and actually does) to store and call telephone numbers from a database of numbers (Choudhary Depo., 97:21-22; *see also* 41:4-14), as well as to call Plaintiff's telephone number without human intervention (*id*. at 58:9-15; 55:15-56:5; Synder Decl., ¶¶ 70-77), i.e., the system can make "automated calls." *See Nelson*, *supra*, at 2013 U.S. Dist. LEXIS 40799 at *27.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1

While Yahoo's representative stated that it is "not possible to use Yahoo!'s PC to SMS Service to send messages to random or sequential telephone numbers" (Choudhary Decl., ¶ 11); this does not change that fact that Yahoo's system has the capacity to send text messages to telephone numbers sequentially.  Not only did Yahoo send two text messages to Plaintiff's cell phone (one after another[13]), had Plaintiff wished to communicate with the Yahoo user by sending a reply text message, Yahoo would have then sent Plaintiff another text message once the Yahoo user responded, and so on and so forth between the Yahoo user and the recipient in sequential order. *See* Choudhary Decl., ¶ 5, lns. 21-22; *see also* Choudhary Depo., 28:7-15; 30:17-32:14; 34:11-35:15; 38:1-42:5; 101:12-17.

Moreover, Yahoo's argument that "a Yahoo! User sent a personal message to Plaintiff" is a red herring meant to divert attention from the fact that Yahoo sent its *own* unsolicited text message to Plaintiff, which message was received by Plaintiff prior to receiving the text message initiated by a Yahoo user. *Id*. at 43:5-44:24; 47:24-49:12; Synder Decl., ¶ 28, 34-38. Further, Yahoo's representative testified that it could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software code instructing the system to do so, thereby demonstrating the capacity to dial telephone numbers sequentially from a list of telephone numbers. Choudhary Depo., 61:9-62:17; 63:6-22.[14]

Therefore, at minimum, there is an issue of fact regarding use of an ATDS.

---

[13] It is also incorrect for Yahoo! to state a "<u>single</u> text message was sent" (Def.'s Memo., p. 1, ln. 10 (emphasis added)), as the evidence clearly shows that Yahoo sent two messages to Plaintiff (Choudhary Depo., 49:24-50:24).

[14] *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FC.C.R. 559 (2008), the FCC explained that "… <u>to find that calls to … wireless numbers are permissible when the dialing equipment is paired with … dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA</u> …" (emphasis added). Here, the Yahoo's software works together with the hardware to send automated text messages. *See* Choudhary Depo., 22:25-23:22; 24:2-26:3; 61:3-63:1.

## VIII.  SECTION 47 U.S.C. § 230(c)(2)(B) DOES NOT IMMUNIZE YAHOO FROM LIABILITY FOR ITS UNSOLICITED TEXT MESSAGES REGULATED BY THE TCPA

Yahoo argues the Telecommunications Act of 1996, enacted five years after the Telephone Consumer Protection Act of 1991, contains a "Good Samaritan" exemption for Yahoo's ADTS calls to cell phones. Specifically, Yahoo argues that its notification message "made available the technical means to restrict access to further messages, which plaintiff might deem objectionable" (Def.'s Memo., 11:4-5), and that "Yahoo! therefore is insulated from liability for the confirmatory message and entitled to summary judgment on this independent ground" (*id*. at 11:11-13). Yahoo's argument is severely flawed, as explained below.

### A.    Telecommunications Act of 1996

Section 47 U.S.C. § 230(c)(2) states in relevant part:

> No provider or user of an interactive computer service[15] shall be held liable on account of … any action taken to enable or make available to information content providers or others the technical means to restrict access to … material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

### B.    Section 47 U.S.C. § 230(c)(2)(D) Does Not Apply To Plaintiff Because Plaintiff Is Not Yahoo's Customer

Yahoo argues that it "made available [to Plaintiff] the technical means to restrict access to further messages, which plaintiff might deem objectionable." Def.'s Memo., 11:4-5. However, Plaintiff is not Yahoo's customer. Sherman Decl., ¶ 10; *see also* Choudhary Decl., ¶ 8, Dkt. No 9-2. It is the unidentified Yahoo user who initiated a text message to Plaintiff's cell phone who is a Yahoo customer. Choudhary Depo., 76:12-13. Yahoo attempted, as it claims, to provide means to Plaintiff to prevent further unwanted text messages, but Yahoo fails to

---

[15] Plaintiff does not challenge Yahoo's argument here that it is a provider of an "interactive computer service" pursuant to 47 U.S.C. § 230(f)(2).

Kazerouni Law Group, APC
Costa Mesa, California

realize that there is no business relationship between Yahoo and Plaintiff. While it makes sense that Yahoo may have wanted to take steps to prevent objectionable material from being sent to its customers, Yahoo has no business sending its unsolicited text message to Plaintiff who is not a customer of Yahoo. The Telecommunications Act places an obligation on providers of interactive computer services to inform its "customers" of parental control options. [16] Nowhere in the text of the Telecommunication Act is a provider of interactive computer services permitted to send a completely unsolicited marketing text message to non-Yahoo customer, like Plaintiff, without violating the TCPA.

**C.   Yahoo's Notification Text Message Directed Plaintiff To A Webpage For Marketing Purposes**

Nowhere on the text of the Telecommunication Act is a provider of interactive computer services, such as Yahoo, permitted to send a completely unsolicited text message to non-Yahoo customer (which directed the non-Yahoo customer to Yahoo's web page for signing up for Yahoo's Instant Messenger, *see* Exhibit 5 to Choudhary Depo.). Nevertheless, Yahoo argues that it is immune from liability under the TCPA because it "made available the technical means to restrict access to further messages, which plaintiff might deem objectionable." Def.'s Memo., 11:4-5. Yahoo is mistaken. The Good Samaritan exemption cannot be used by yahoo to send an unsolicited text message to a non-Yahoo customer directing that non-Yahoo customer to Yahoo's webpage for marketing purposes. Yahoo made a tactical marketing decision to invite non-Yahoo customers to sign up for Yahoo! Instant Messenger and other products by sending the notification text message under the guise of preventing SPAM (*see* Exhibit 5 to Choudhary Depo.).

///

---

[16] *See* 47 U.S.C. § 230(d) ("Providers of interactive computer services must, at the time of entering an agreement with a <u>customer</u>, notify the <u>customer</u> in an appropriate manner that parental control protections are commercially available and these protections may assist in limiting access to material that is harmful to minors.").

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

### 1.   Yahoo's notification text message did not contain explicit opt-out Instructions

Yahoo's representative testified that Yahoo's notification text message did not contain explicit opt-out instructions. *See* Choudhary Depo., 82:14-84:19.  If the true purpose of the text message was to provide means to Plaintiff to opt-out of further unwanted text messages, Yahoo's notification message was far from furthering that purpose. Defendant's testimony shows that helping the consumer opt-out was not the main purpose of Yahoo's webpage hidden on the page. Exhibit 3 to Choudhary Depo.; *see also* Synder Decl., ¶ 61.

### 2.   Plaintiff would have to go through several steps in order to stop further unwanted text messages from Yahoo

Plaintiff would have had to send two separate text messages to Yahoo in order to opt-out of further unwanted text messages from Yahoo after having first received Yahoo's SPAM text (i.e., the first text message). *See* Snyder Decl., ¶ 43. First, Plaintiff would have had to text "INFO" in a reply message (i.e., the second text) in order to receive the list of commands from Yahoo (i.e., third text), such as an opt-out command (Choudhary Depo., 85:19-22). Second, after having read and understood the commands, Plaintiff would have to identify the correct command in order to send an opt-out text message to actually prevent further text messages (i.e., the fourth text) (*see* Choudhary Depo., 86:10-87:10). Alternatively, Plaintiff could follow the web link in the notification text message where Plaintiff would be led to a webpage with the word "Help" hidden in very tiny language and then follow further instructions. *See* Choudhary Depo., 89:20-92:20; Exhibit 5 thereto.

### 3.   Yahoo does not actually stop the text message sent by the Yahoo user from being received

Ms. Choudhary testified during deposition that Yahoo cannot guarantee its notification text message is sent prior to any message from a Yahoo user. *See* Choudhary Depo., 50:8-24. Yahoo's notification text message does not actually prevent the sending of the text message from the Yahoo user because both that text

1  message and the notification message are sent at the same time. *Id*. ███████

2  █████████████████████████████████████████████████████████████

3  █████████████████████████████████████████ *See id.* at 87:15-88:5.

4  Therefore, the notification text message does not actually prevent the text message

5  from the Yahoo user. Even if the recipient does opt-out, that does not stop the first

6  SPAM text message from Yahoo from being received. Thus, the opt-out text does

7  not act as a gatekeeper for Yahoo's own SPAM text message.

### D.   The Telecommunications Act Did Not Create An Exemption For Liability Under The Telephone Consumer Protection Act

10       Under the rule of statutory interpretation, "[w]here Congress explicitly

11  enumerates certain exceptions to a general prohibition, additional exceptions are

12  not to be implied, in the absence of evidence of a contrary legislative intent."

13  *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d

14  548 (1980); *see also Horner v. Andrzjewski,* 811 F.2d 571, 575 (Fed. Cir. 1987)

15  ("[A]s a general rule of statutory construction, the expression of one exception

16  indicates that no other exceptions apply."). In the TCPA case at bar, the only

17  defense to liability is the defense of "prior express consent" (47 U.S.C. §

18  227(b)(1)(A)), which Yahoo chose not to argue. There is no other defense to a

19  TCPA action. The only exception is a call for "emergency purposes" (*id.*), which

20  Yahoo again did not argue. This Court may not read such an exception (such as a

21  Good Samaritan Exemption) into the statute (i.e., the TCPA) where the

22  Legislature chose not to create one. *See Hylkema v. Rentcollect Corp.*, 2006 WL

23  2819357 (W.D. Wash., Sept. 28, 2006). Yahoo has not cited a single case where

24  the Good Samaritan Exemption was applied to the TCPA. Therefore, Yahoo's

25  reliance on the Good Samaritan Exemption is misplaced.

26  ///

27  ///

28  ///

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

E.   **Yahoo's Case Law Does Not Support Application of The "Good Samaritan" Exemption For Calls Regulated By The TCPA**

1.   *Zango*

Yahoo cites to *Zango Inc. v. Kaspersky Lab, Inc.,* 568 F.3d 1169, 1174-75 (9th Cir. 2009), and states that the court in *Zango* found the exemption under 47 U.S.C. § 230 "extended protection to a distributor of Internet security software that filtered adware and malware." *See* Def.'s Memo., p. 10:16-17. Defendant's argument misses the mark, however, as it fails to bridge the gap between the exemption offered to companies that send SPAM, virus and ad-blocking products to paid subscribers and the fact that Yahoo sent an unsolicited text message to Plaintiff without a prior or existing business relationship.

In *Zango*, defendant Kaspersky qualified for the "good Samaritan" exemption because "users choose to purchase, install, and utilize the Kaspersky software," in an attempt to stop their computers from being infected with adware and malware. The court noted, Kaspersky was an "access software provider" because, "by providing anti-malware software, it 'provide[s] software ... or enabling tools that ... filter, screen, allow, or disallow content.' § 230(f)(4), (f)(4)(A). And, under the literal provisions of § 230(f)(2), Kaspersky 'provides or enables computer access by multiple users to a computer server' by providing its customers with online access to its update servers." *Id.* (emphasis added).

Yahoo tries to apply its unsolicited SMS message, with an opt-out link that directs the recipient to a webpage with directions on how to opt-out of something they never opted into or paid for or subscribed to, under the same exception to TCPA liability. However, Yahoo's opt-out procedure offers no service or product like in *Zango*, and Yahoo's notification text message actually solicited Plaintiff without consent. Put a different way, Yahoo argues that it is a "Good Samaritan" by providing safeguards against its own unsolicited contact in the future with Plaintiff, despite the fact the notification text message itself was unsolicited by Plaintiff.

Kazerouni Law Group, APC
Costa Mesa, California

### 2.  *Pallorium*

The *Pallorium v. Stephen J. Jared*, 2007 WL 80955 (Cal. App. Ct. Jan. 11, 2007) case cited by Yahoo is an unpublished/non-citable opinion. *See* California Rule of Court 8.1115(a). In any event, in *Pallorium*, the defendant created a dynamic IP space list (the "IP list") based on the open relay data he obtained and maintained it as he received updated information. The defendant also wrote software called "RB Check" that allowed defendant, and third parties that wished to utilize the IP List provided by defendant, to test for open relays and thereby exclude emails from those sources. Thus, the case at bar is distinguishable from *Pallorium* in that the defendant in *Pallorium* took steps to block content to his *own* email, as well as permitted others who *voluntarily* accessed the IP List posted in the defendant's website to block email SPAM to their own email address by identifying open relay servers. Here, Yahoo sent an *unsolicited* text message to Plaintiff's cell phone and now claims immunity because Yahoo provided a means to opt-out of *further* unwanted text message. However, efforts to block future text messages does not absolve Yahoo from liability under the TCPA for Yahoo's initial SPAM text message. ██████████████████████████████ ████████████████████████████████ *See* Choudhary Depo., 86:10-87:23. Again, in *Pallorium*, the persons to be protected were essentially Defendant's customers, whereas here Plaintiff is not a Yahoo customer. Sherman Decl., ¶ 10.

### 3.  *Holomaxx*

The *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097 (N.D. Cal. 2011) case cited by Yahoo concerned a situation where an e-commerce business development company's marketing emails were blocked by the defendant Microsoft by prohibiting transmission of Holomaxx's emails to the users of Microsoft's free email service. *Id*. at *1101. Once again, Yahoo fails to acknowledge the significance of the fact that Plaintiff is not a Yahoo customer, and that Yahoo had no business sending Plaintiff a SPAM text message.

Moreover, the *Holomaxx* Court also recognized that, under the allegations in that case, Microsoft "reasonably could conclude that Holomaxx's emails were 'harassing' and thus 'otherwise objectionable.'" *Id*. at *1104. Yahoo has made no such showing here, especially where Yahoo asserts the text message from the Yahoo user was likely a "friend." Choudhary Decl., ¶ 7, Dkt. No. 9-2.

Thus, Yahoo's cases do not support Yahoo's claimed exemption here.[17]

### F.     Yahoo Should Not Be Allowed To Avoid TCPA Liability For Its Unsolicited Commercial Text Message

From a public policy perspective, accepting Yahoo's argument would effectively grant free reign to Yahoo to send a single unsolicited commercial text message (i.e., the notification text) to thousands of non-Yahoo customers with impunity.  Yahoo's approach, if allowed, would permit Yahoo to solicit anyone for any reason, and if the person contacted took the bait, great for Yahoo. If the person contacted raised an issue over the unsolicited contact, Yahoo would then be insulated from any wrongdoing under the "Good Samaritan" exemption. Therefore, not only does Yahoo's argument fail as a matter of law, but as a matter of public policy, Yahoo's argument would eviscerate the protection afforded by the TCPA by giving Yahoo and other companies like Yahoo carte blanche to violate the TCPA.

## IX.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion for summary judgment.

Respectfully submitted,
**Kazerouni Law Group, APC**

Date: September 13, 2013                    By:/s/ Abbas Kazerounian, Esq.
                                            ABBAS KAZEROUNIAN

---

[17] The Ninth Circuit in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) recognized that § 230 seeks to "empower parents to restrict their children's access to objectionable or inappropriate online material" *Id*. at *1099 (citing § 230(b)(1)-(2) & (4)-(5)). There is no parent-child relationship between Yahoo and Plaintiff.

Kazerouni Law Group, APC
Costa Mesa, California