UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL DAVID SHERMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>YAHOO! Inc.,<br><br>Defendant. | CASE NO. 13cv0041-GPC-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No. 9] |

Before the Court is Defendant Yahoo! Inc.'s ("Yahoo!") motion for summary judgment. (Dkt. No. 9.) The motion has been fully briefed. (Dkt. Nos. 17, 23.) For the reasons set out below, the Court hereby **DENIES** Defendant's motion for summary judgment.

## BACKGROUND

This case concerns a notification message that was sent to a cellular phone number as part of Yahoo!'s Instant Messenger service. Plaintiff, individually and on behalf of those similarly situated, claims such messages violate provisions of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(b)(1)(A), and seeks statutory damages of $500 per negligent violation and up to $1500 per

1  knowing or willful violation. (Dkt. No. 1, "Complaint.") Specifically, Plaintiff
2  alleges that Defendant violated the TCPA by "illegally contact[ing] Plaintiff and the
3  Class members via their cellular telephones by using unsolicited SPAM text
4  messages." (Complaint ¶ 26.)
5       On or about January 7, 2013, Plaintiff received two text messages on his
6  cellular telephone from a number identified as 924-665-01. (Dkt. No. 17-2,
7  "Sherman Decl.," ¶ 4.) The first text message, which is the basis for Plaintiff's suit,
8  stated:

> A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms.

12 (Complaint ¶ 15; Sherman Decl. ¶ 5.) The second text message stated: "hey get online
13 I have to talk to you." (Complaint ¶ 14; Sherman Decl. ¶ 6.) Plaintiff alleges Yahoo!
14 sent the first message via an automatic telephone dialing system ("ATDS") as defined
15 and prohibited by the TCPA. (Complaint ¶¶ 17-18.) Plaintiff alleges he never provided
16 Yahoo! with his mobile phone number, nor sent or received a similar text message from
17 the aforementioned number. (Complaint ¶¶ 8-9, 13; Sherman Decl. ¶¶ 8-9.) Plaintiff
18 also alleges he was not a subscriber of Yahoo!'s Instant Messenger Service at the time
19 he received the messages. (Sherman Decl. ¶ 10.)
20      Defendant describes Yahoo! Messenger as an instant messaging client and
21 associated protocol provided by Yahoo! free of charge that can be downloaded and
22 used by anyone registered as a user with a Yahoo! ID. (Dkt. No. 9-2, "Choudhary
23 Decl.," ¶ 3.) Yahoo! offers a feature called the Mobile SMS Messenger Service ("PC
24 to SMS Service"), which allows registered Yahoo! users to send instant messages to
25 mobile devices from their computers through the Yahoo! Messenger platform.
26 (Choudhary Decl. ¶ 4.) "PC to SMS Service" converts instant messages into SMS
27 messages (commonly referred to as text messages) so that they will be received on
28 mobile devices. (Choudhary Decl. ¶ 5.) Recipients can then reply from their mobile

devices, and the sender will receive the reply message as an instant message. (Id.) This tool allows people who do not own mobile phones to send and receive text messages from their computers. (Id.)

Yahoo! sends a mobile phone user a notification message in response to an instant message from an unidentified third party. Defendant utilizes the following Yahoo! Messenger notification process:

> When a Yahoo! user sends a message using the PC to SMS Service, Yahoo! automatically verifies whether anyone previously had sent a message to the intended recipient's telephone number through the PC to SMS Service. If the recipient's telephone number has not previously been sent a text message . . . then a single notification message is sent, alerting the recipient that a friend . . . sent a message . . . . It also instructs the recipient to "Reply INFO to this SMS for help or go to y.ahoo.it/imsms." This confirmatory message is automatically generated as a result of the instant message initiated by a Yahoo! user.

(Choudhary Decl. ¶ 8.) The mobile phone user can then utilize three methods to opt-out of receiving future "PC to SMS Service" messages.[1] Yahoo! sends the notification message only if the mobile phone user has not previously received a message via the "PC to SMS Service." Here, Plaintiff had not previously received a message via the "PC to SMS Service" nor had he provided Yahoo! his mobile phone number. Accordingly, Plaintiff received a text message from Yahoo! when a third party sent him an instant message via Yahoo!'s Instant Messenger service. (Complaint ¶ 21; Sherman Decl. ¶¶ 8-9.)

Defendant's motion for summary judgment is based on the following three arguments: (1) Plaintiff's claim must fail as a matter of law because the TCPA was not

---

[1] A mobile phone user may opt-out of receiving Yahoo! Messenger service text messages in three ways. First, the mobile phone user may reply "INFO" to the notification message, upon which a subsequent text message offers the user "commands" about Yahoo! Messenger Service, including a "command" to opt-out. (Opp., Ex. 3, "Choudhary Deposition," at 85:19-25.) Second, the mobile phone user may click on the Yahoo! webpage which includes a "help" link with instructions to opt-out. (Choudhary Deposition at 91:15-24.) Third, if a Yahoo! user sends four instant messages to the mobile phone user, and the mobile phone user does not respond to any of the messages, Yahoo!'s "PC to SMS Service" server will automatically opt-out the mobile phone user. (Choudhary Deposition at 87:15-23; 88:21-24.)

intended to reach a single confirmatory text message; (2) This case does not involve use of an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA; and (3) Yahoo! is immune from liability under the Good Samaritan exemption in the Telecommunications Act. (Dkt. No. 14, "MSJ.")

**DISCUSSION**

**I. Legal Standards**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson, 477 U.S. at 248. A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,

210 F.3d 1099, 1105–06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material—the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247–48.

## II. Telephone Consumer Protection Act ("TCPA")

The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)). In particular, the TCPA makes it illegal:

> (A) to make any call (*other than a call* made for emergency purposes or *made with the prior express consent* of the called party ) using *any automatic telephone dialing system* or an artificial or prerecorded voice—
> . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added). Congress authorized a private right of action to enforce the Act. See 27 U.S.C. § 227(b)(3). Additionally, Congress directed the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of" the TCPA. See 27 U.S.C. § 227(b)(2).

### A. Single Confirmatory Text Message

The parties dispute whether Yahoo!'s notification sent to Plaintiff was

consented to and constitutes a single, confirmatory text message not intended to be covered by the TCPA. Federal courts have consistently concluded that "when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction." Emanuel v. Los Angeles Lakers, Inc., CV 12-9936-GW SHX, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) (citing Saunders v. NCO Fin. Sys., No. 12–CV–1750, 2012 U.S. Dist. LEXIS 181174, at *8, 2012 WL 6644278 (E.D.N.Y. Dec. 19, 2012) (compiling cases including Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012)). These decisions follow the FCC's common sense approach of interpreting the TCPA to exempt consensual text messages. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) ("[P]ersons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." ).

Yahoo! relies on the recent decision Ibey v. Taco Bell Corp., 2012 WL 2401972 (S.D. Cal. June 18, 2012), in support of their argument. (MSJ at 6.) In opposition, Plaintiff argues Ibey is inapplicable and the notification message at issue was unsolicited by Plaintiff. (Dkt. No. 17, "Opp." at 5-13.) The Court finds Ibey and other similar district court cases finding prior express consent[2] are distinguishable. In Ibey, the allegedly unsolicited text message was sent in response to a voluntary text message sent from plaintiff to cease communications. 2012 WL 2401972 at *3. The plaintiff had initially agreed to receive text messages from the

---

[2] *See also* Pinkard v. WalMart Stores, Inc., 2012 WL 5511039 (N.D.Ala. Nov.9, 2012) (distinguishing Ninth Circuit decision Satterfield, 569 F.3d at 955, and finding plaintiff's provision of her telephone number to defendant constituted "prior express consent" under the TCPA); Roberts v. PayPal, Inc., 2013 WL 2384242 (N.D. Cal. May 30, 2013) (finding "prior express consent" where plaintiff provided his cell phone number to defendant); Emanuel v. Los Angeles Lakers, Inc., 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) (concluding plaintiff's voluntary provision of his cell phone number to defendants for a specific request that his personal message appear on the Staples Center jumbotron constituted "prior express consent" to receiving a confirmatory text message and thus was not actionable under the TCPA).

defendant, but then changed his mind. Id. He then sent the text message "STOP" to the defendant. Id. In response, defendant sent plaintiff a confirmation text message that plaintiff had opted out of receiving text message notifications. Id. Based off this single text message, plaintiff filed a lawsuit alleging a violation of the TCPA. Id. In granting defendant's motion to dismiss, the court reasoned that "[d]efendant's sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA." Id.

Unlike the plaintiff in Ibey, Plaintiff Sherman did not send a voluntary message to Yahoo! prior to receipt of the unsolicited text message. Plaintiff did not provide Yahoo! prior express consent or take any action which would have justified a response or confirmation by Yahoo! Based on these facts, the Court concludes Plaintiff did not offer his prior express consent to Yahoo! to be contacted within the meaning of § 227(b)(1).

In addition, the Court observes Plaintiff has not offered any facts regarding whether he released his phone number to the unidentified third party (described by Defendant as the "Yahoo! user"). This gap in the record does not alter the Court's conclusion and a previous Ninth Circuit decision confirms this Court's rationale. In Satterfield v. Simon & Schuster, Inc., 569 F.3d at 946, the plaintiff had provided her cell phone number to a company called Nextones (also not a named defendant in that case) to sign up for a free ringtone. Id. The plaintiff later received an advertising text message from defendant Simon & Schuster, which had obtained plaintiff's number from a list of Nextones subscribers. Id. The Ninth Circuit held that "Satterfield had solely consented to receiving promotional material from Nextones or their affiliates and brands," and that her consent "cannot be read as consenting to the receipt of Simon & Schuster's promotional material." Id. Here, even assuming, *arguendo*, Plaintiff had provided the unidentified Yahoo! user his

1  mobile phone number, it cannot be interpreted as consent to receive Yahoo!'s
2  Messenger Service messages.
3     The question then becomes whether Yahoo!'s sending a single notification
4  text message without Plaintiff's prior consent is actionable under the TCPA.
5  Defendant argues that Yahoo!'s notification message is not the type of invasion of
6  privacy Congress intended to prevent in passing the TCPA. (MSJ at 7-8.) Plaintiff
7  responds that the text of the TCPA is unambiguous and content-neutral, and that a
8  single call may be actionable under the TCPA. (Opp. at 10-12.)
9     The Court declines to rely on Congressional intent when the language of the
10 TCPA is clear and unambiguous. Satterfield, 569 F.3d at 951 (concluding the
11 statutory text of the TCPA is clear and unambiguous). The plain language of the
12 TCPA exempts certain calls in certain contexts. See 47 U.S.C. § 227(b)(1)(A)(iii)
13 (exempting calls sent during an emergency or with prior express consent). In issuing
14 the TCPA implementing guidelines, the FCC has determined certain categories of
15 calls are considered exempt under the 'prior express consent' provision. See, e.g., In
16 the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of
17 1991, 23 F.C.C. Rcd. 559, 564 (2008) (determining that autodialed and prerecorded
18 "calls to wireless numbers provided by the called party in connection with an
19 existing debt are made with the 'prior express consent' of the called party").
20 Additionally, the FCC has noted that the TCPA prohibition applies "regardless of
21 the content of the call." Id. at 564, ¶ 11. Relying on the statutory text and the FCC
22 implementing guidelines, the Ninth Circuit has approached application of the TCPA
23 with a "measure of common sense." Chesbro v. Best Buy Stores, L.P., 705 F.3d 913,
24 918 (9th Cir. 2012). Indeed, courts in this district have found that "[c]ontext is
25 indisputably relevant to determining whether a particular call is actionable."
26 Ryabyshchuck v. Citibank (S. Dakota) N.A., 2012 WL 5379143 (S.D. Cal. Oct. 30,
27 2012).
28    Using these principles, the Court concludes that, absent prior express consent,

a single call or text with the use of an ATDS may be actionable under the TCPA. See Satterfield, 569 F.3d at 946 (remanding case to district court where the alleged violation consisted of one advertising text message). This conclusion is in alignment with the FCC's reiteration of the plain language of section 227(b)(1)(iii) as prohibiting the use of autodialers to make "any call" to a wireless number absent an exemption. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 564 (2008). The Court concludes that the prohibition of § 227 (b)(1)(iii) applies even if Yahoo! sent only one notification message to Plaintiff without his prior consent.

### B. Automatic Telephone Dialer System

The TCPA only prohibits calls made with an "automatic telephone dialing system" ("ATDS"). The Ninth Circuit has upheld the FCC's interpretation that a text message is considered a "call" within the meaning of the TCPA. Satterfield., 569 F.3d at 954. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order,18 FCC Rcd 14014, 14092 (2003) ("2003 TCPA Order") (emphasis added). A predictive dialer is considered an ATDS under the TCPA. Id. at 14093.

"A predictive dialer is . . . hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers . . . from a database of numbers." Id. at 14091. The FCC states that "the basic function of such equipment

1  ... [is] the capacity to dial numbers without human intervention." <u>In the Matter of</u>
2  <u>Rules & Regulations Implementing the Te. Consumer Prot. Act of 1991</u>, 23
3  F.C.C.R. 559, 566 (2008). The Ninth Circuit, upon evaluating ATDS technology
4  under the TCPA, stated "the statute's clear language mandates that the focus must be
5  on whether the equipment has the capacity 'to store or produce telephone numbers
6  to be called, using a random or sequential number generator.'" <u>Satterfield</u>, 569 F.3d
7  at 951. The Court thus concluded, "a system need not actually store, produce, or call
8  randomly or sequentially generated telephone numbers, it need only have the
9  capacity to do so." <u>Id.</u>
10       Defendant argues the Yahoo! server and system is not an ATDS because it
11 does not have the capacity to store or produce telephone numbers to be called, using
12 a random or sequential number, nor can it dial such numbers. (MSJ at 9-10;
13 Choudhary Decl. ¶ 11.) Plaintiff responds that Defendant's own admissions show
14 Yahoo!'s equipment is an ATDS because the Yahoo! server has the capacity to store
15 numbers. (Opp. at 15-16.)
16       The deposition of Yahoo!'s engineer, Nita Choudhary, indicates that
17 Yahoo!'s equipment may have the capacity to store telephone numbers. (Choudhary
18 Depo. at 44:9-46:6; Synder Decl. ¶ 35-36). As previously discussed, Yahoo!'s
19 notification message is automatically generated after the mobile phone number is
20 verified in a database to determine whether the number has previously been sent a
21 message. (Choudhary Depo. at 64:14-21; Snyder Decl. ¶ 37, 39.) In short, Yahoo!'s
22 notification process entails three steps: (1) a Yahoo! user initiates an instant
23 message to a mobile phone number; (2) the "PC to SMS Service" server checks the
24 Yahoo! server's database for the mobile phone number; and (3) if the mobile phone
25 number is not in the database (i.e., has not received a message before), then Yahoo!
26 sends a notification message to the mobile phone user. (<u>Id.</u>) If the mobile phone
27 number was not previously in the server database, Yahoo!'s equipment stores the
28 mobile phone number. (Opp. at 2; Choudhary Depo. at 41:3-42:14.)

Plaintiff offers the expert report of Mr. Randall Snyder to support the contention that Yahoo!'s equipment is an ATDS. Mr. Snyder concludes Yahoo!'s "PC to SMS Service" is a "value-added text messaging service," which "provide[s] a variety of text messaging services that are not strictly peer-to-peer . . . rather, they . . . use automated computer equipment to send and receive text messages." (Snyder Decl. ¶¶ 10-12.) Based upon a review of background information and Yahoo!'s technology, Mr. Snyder concludes that the "equipment used by the Defendants has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers," and that the equipment "has the capacity to dial cellular telephone numbers without human intervention." (Synder Decl. ¶¶ 74, 76.) Specifically, Mr. Snyder reasoned "[i]n order for the "PC to SMS Service" system to determine whether an IM had ever been previously sent to a particular intended message recipient, identified only by a cellular telephone number, and whether to send that recipient an initial notification message, the system must *store* cellular telephone numbers to be called." (Snyder Decl. ¶ 39) (emphasis in original).

Yahoo! contends that it is impossible for their equipment to send messages to random or sequential numbers. (Choudhary Decl. ¶ 11.) Specifically, Yahoo!'s engineer states that "[t]he servers and systems affiliated with the PC to SMS Service do not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to call those numbers. It is simply not possible." (Id.) In response, Plaintiff points to the testimony of Yahoo's representative who testified that it could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software code instructing the system to do so, thereby demonstrating the capacity to dial telephone numbers sequentially from a list of telephone numbers. (Choudhary Depo. at 61:9-62:17; 63:6-22.14.) As stated by the Ninth Circuit, the focus of the inquiry in evaluating whether a technology is considered an ATDS is whether the

equipment has the capacity to store and dial phone numbers. See Satterfield, 569 F.3d at 951. The parties dispute whether Yahoo!'s "PC to SMS Service" technology explained above has the requisite capacity to ***both*** store numbers and dial random or sequential numbers. The Court concludes there is a genuine issue of material fact as to whether the equipment Yahoo! utilizes for the PC to SMS Service constitutes an ATDS within the meaning of the statute. As such, the Court DENIES Defendant's motion for summary judgment.

**C. Good Samaritan Immunity**

The Court next addresses Yahoo!'s argument that Section 230(c)(2)(B) of the Communication Decency Act ("CDA"), 47 U.S.C. § 230, renders it immune from liability in this case. The CDA was enacted "to control the exposure of minors to indecent material" on the Internet. Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1173 (9th Cir. 2009) (citing Batzel v. Smith, 333 F.3d 1018, 1026 (9th Cir.2003)). The operative section is 230(c), which states:

> (c) Protection for "good samaritan" blocking and screening of offensive material
>
> . . .
>
> (2) Civil Liability. No provider or user of an interactive computer service shall be held liable on account of–
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or ***otherwise objectionable,*** whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers[3] or others the technical means to restrict access to material described in paragraph (A).

47 U.S.C. § 230 (emphasis added).

A plain reading of the statute indicates protection is intended only for the

---

[3] The CDA defines an "information content provider" as any "person or entity responsible, in whole or in part, for the creation or development of information provided through" the interactive computer service. 47 U.S.C. § 230(f)(3).

1  "blocking and screening of offensive material." § 230(c). Protection from civil
2  liability under 230(c)(2)(B) will be afforded so long as (1) Yahoo! is a "provider" or
3  a "user" of an "interactive computer service;" and (2) Yahoo! "enable[s]" or "makes
4  available" for its users the "technical means to restrict access," to objectionable
5  material under § 230(c)(2)(A). See Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d
6  1169, 1175-77 (9th Cir. 2009).

7      The parties do not dispute that Yahoo! is a provider of an interactive
8  computer service. An "interactive computer service" is defined as "any information
9  service, system, or access software provider that provides or enables computer
10  access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Other courts
11  have found internet service providers such as Yahoo! to meet this definition. See
12  Holomaxx Technologies v. Microsoft Corp., 783 F. Supp. 2d 1097, 1104 (N.D. Cal.
13  2011) (citing district court cases which have concluded that ISP's that provide email
14  services are properly characterized as "interactive computer service" providers).
15  Thus, the Court concludes this element is satisfied.

16      Yahoo! further argues that by including a link to a help page which, among
17  other things, contain instructions on how to block further messages, the notification
18  message at issue makes available the "technical means to restrict access" to
19  messages which plaintiff might deem "objectionable." (MSJ at 11.) The Court
20  disagrees for the following reasons.

21      As a preliminary matter, Yahoo! does not block or filter the unidentified third
22  party user's message to Plaintiff. Rather, the record shows that the PC to SMS
23  Service" "*automatically* convert[s] instant messages into [text] messages so that
24  they will be received on mobile devices," and the sole screening Yahoo! does is to
25  "*automatically* verif[y] whether anyone previously had sent a message to the
26  intended recipient's telephone number." (Choudhary Decl. ¶¶ 5, 8) (emphasis
27  added).
28

1    Yahoo! relies on Holomaxx Technologies v. Microsoft Corp., 783 F. Supp. 2d at 1097, to support its argument. In that case, Microsoft employed various filtering technologies to "identify and reject potentially harmful communications," to its email service subscribers. Holomaxx, 783 F. Supp. 2d at 1101. Holomaxx, an ecommerce business development company, sued for Microsoft's alleged "blocking, rerouting and 'throttling' emails sent by Holomaxx." Id. In assessing the availability of "good samaritan" immunity under the CDA, the court concluded that Microsoft "reasonably could conclude that Holomaxx's emails were 'harassing' and thus 'otherwise objectionable.'" Id. at 1104.

    Here, neither Yahoo! nor the mobile phone user have the opportunity to determine whether the third party message is "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," as required by § 230 (c)(2)(A). The Court declines to broadly interpret "otherwise objectionable" material to include any or all information or content. The Ninth Circuit has expressed caution at adopting an expansive interpretation of this provision where providers of blocking software "might abuse th[e CDA] immunity to block content for anticompetitive purposes or merely at its malicious whim, under the cover of considering such material 'otherwise objectionable,'" under § 230(c)(2). Zango, 568 F.3d at 1178 (Fisher, J.).[4] Accordingly, the Court concludes that the "good samaritan" immunity is inapplicable where Yahoo! did not engage in any form of

---

[4]The Court observes the present case is distinguishable from the sole Ninth Circuit opinion to apply this provision of the CDA. See Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1175 (9th Cir. 2009). In that case, plaintiff Zango, an online media company, sued defendant Kaspersky for distribution of software that allegedly filtered and blocked Zango customers' use of Zango's downloadable programs. The Ninth Circuit afforded Kaspersky immunity under the "good samaritan" provision because "the statute plainly immunizes from suit a provider of interactive computer services that makes available software that filters or screens material that the user or the provider deems objectionable." Id. at 1174. Unlike Kaspersky, Yahoo! is an internet service provider that sends notification messages to inform recipients of the Yahoo! Messenger service; this is quite distinct from an access software provider that allows users to block or filter messages.

1 content analysis of the subject text to identify material that was offensive or harmful
2 prior to the automatic sending of a notification message. See § 230 (c).

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant Yahoo!'s motion for summary judgment.

**IT IS SO ORDERED.**

DATED: February 3, 2014

HON. GONZALO P. CURIEL
United States District Judge