**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Susan Pathman

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL DAVID SHERMAN and SUSAN PATHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>YAHOO! INC.,<br><br>Defendant. | Case No.: 13-CV-00041-GPC (WVG)<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING PURSUANT TO THE COURT'S JULY 15, 2015 ORDER [DKT. NO. 164]**<br><br>**Date:** July 24, 2015<br>**Time:** 1:30 p.m.<br>**Place:** 2D<br>**Judge**: Hon. Gonzalo P. Curiel |

## I. INTRODUCTION

Pursuant to the Court's July 15, 2015 order, Plaintiff submits this supplemental briefing in opposition to Yahoo's second motion for summary judgment. Based upon the Federal Communication Commission's ("FCC") July 10 2015 ruling on the TCPA ("FCC's July 10 Ruling"), whether Yahoo's PC2SMS system may be found to send text messages without "human intervention" calls for a case-by-case analysis. When considering all the pertinent facts, the Court should find that Yahoo's PC2SMS system is an automatic telephone dialing system ("ATDS")[1] as a matter of law, for it sends automated text messages without human intervention.

## II. HUMAN INTERVENTION

The FCC's July 10 Ruling recognizes, "the Commission has also long held that the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time.'" *Id*. at ¶ 17. This makes sense, for the FCC stated back in 2003 that "[t]he basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention. We fully expect automated dialing technology to continue to develop." 2003 TCPA Order, 18 FCC Rcd at 14092-93, ¶ 132.[2] The ruling "account[s] for changes in calling technology that inure to the benefit of consumers

---

[1] Although the FCC's July 10 Ruling addressed many aspects of the TCPA, Yahoo should not be permitted to argue any issues other than the ATDS issue in its supplemental briefing, for its second motion for summary judgment is limited to the "ATDS" issue only. *See* Def.'s Memo., 1:2-5, Dkt. No. 134-1 (Yahoo argues that "the informational text messages sent through its PC2SMS service (including the single informational message allegedly sent to plaintiff) are not sent using an" ATDS).

[2] The FCC notes, "Congress intended the word 'dial' to mean initiating a communication with consumers through use of their telephone number by an automated means…" FCC's July 10 Ruling, at 113. Yahoo's PC2SMS clearly dials consumers' cell phone numbers for purposes of the "dialing" requirement (*see* Pl.'s Opp., 152-1, 10:3-6, 15-19), and Yahoo has not denied that PC2SMS dials or has the capacity to dial cell phone numbers.

while fulfilling the intent of Congress to prohibit nuisance calls that cause frustration and harm." FCC's July 10 Ruling, ¶ 29.

### A. The Human Intervention Issue Requires A Case-By-Case Analysis According To The FCC

The FCC's July 10 Ruling explained that the "human intervention" issue requires a case-by-case analysis, stating:

> How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination.

FCC's July 10 Ruling, ¶ 17.

Moreover, the FCC found that "Internet-to-phone text messages, including those sent using an interconnected text provider, require consumer consent (*id*. at ¶ 109), for "equipment used to originate Internet-to-phone text messages to wireless numbers via email or via a wireless carrier's web portal is an 'automatic telephone dialing system' as defined in the TCPA, and therefore calls made using the equipment require consent" (*id*. at ¶ 111). The FCC explained that "[t]he equipment used to send these messages thus must necessarily store, or at least have the capacity to store, large volumes of numbers to be called" (*id*.). Also, "[e]ven assuming that the equipment does not actually use a random or sequential number generator, the capacity to do so would make it subject to the TCPA." *Id*. As previously pointed out by Plaintiff, Yahoo "could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software code instructing the system to do so, thereby demonstrating the capacity to dial telephone numbers sequentially from a list of telephone numbers." *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1136 (S.D. Cal. 2014).

Further, the FCC says "such equipment has the capacity to dial numbers and thus meets the second element of the TCPA's autodialer definition." *Id*. at ¶ 112;

*see also id.* at 113 and 114 (addressing the "dialing" aspect of internet-to-phone text messages).[3] As explained in more detail below, the FCC clarified on July 10, 2015 that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." FCC's July 10 Ruling, ¶ 16; *see id.* at ¶ 19

Interestingly, the FCC expressly rejected "PACE's argument that the Commission should adopt a 'human intervention' test by clarifying that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." *Id*. at ¶ 20. The FCC reasoned that "PACE's argument amounts to a simple variation on the 'present ability' arguments" rejected by the FCC in an earlier part of the July 10 Ruling. *Id*.

Thus, the Court is required consider "how the equipment functions and depends on human intervention" in determining whether the "human intervention" element is satisfied as it concerns Yahoo's PC2SMS system. This also means that the mere presence of "some" human intervention does not mean that the human intervention requirement is not satisfied.

### B. Based Upon The Pertinent Facts Regarding Yahoo's PC2SMS System, PC2SMS Sends Text Messages Without Human Intervention, Pursuant To FCC Rulings

Here, the pertinent undisputed facts show that Yahoo's PC2SMS sends automated text messages without human intervention (and essentially sends internet-to-phone text messages discussed by the FCC), such that it is an ATDS under the Telephone Consumer Protection Act. *See* Pl.'s Opp., 152-1, 2:18-5:17.

First, Yahoo designed the PC2SMS system to send the Welcome Message *automatically*[4] upon the occurrence of a certain event that is not initiated by the

---

[3] The TCPA covers "text messages sent from text messaging apps that enable entities to send text messages to all or substantially all text-capable U.S. telephone numbers, including through the use of autodialer applications downloaded or otherwise installed on mobile phones." FCC's July 10 Ruling, ¶ 116.

[4] The process is automated. *See also Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129,

Kazerouni Law Group, APC
Costa Mesa, California

1   recipient of the text message. *Id*. at 2:19-4:23; *see also* Def.'s Memo., 12:13-16.

2   Second, Yahoo, itself (not the Yahoo user), *drafted* the language of the Welcome Message. Pl.'s Opp., 152-1, 2:24-3:1.

4   Third, the Welcome Message is a *separate* text message from the user message. *Id*. at 10:26-27; *see also id*. at 20:27-28.

6   Fourth, the Welcome Message is sent without the knowledge of the Yahoo user who sends a personalized text message using Yahoo's Instant Messenger (*id*. at 3:1-4), and may be sent to a non-Yahoo subscriber (*id*. at 3:25).

9   Fifth, the Welcome Message included a link that would lead a consumer to a webpage for Yahoo where Yahoo advertises it services (*see* Dkt. No. 152-8, ¶ 4[5]), which marketing text message was unsolicited by Ms. Pathman (Pl.'s Opp., p. 18, n. 15).

13  Sixth, consumers may be sent multiple system messages through PC2SMS, including the Welcome Message (a second Welcome Message may be sent after the opt-out timer expires[6]) and Warning Message (the Warning Message is sent long after the cell phone number has been stored in Yahoo's Optin DB database[7]). *See* Pl.'s Opp., 4:7-5:17.

18  Seventh, Yahoo's Welcome Message can be received by the text message recipient prior to receipt of a Yahoo user's personalized text message, as the PC2SMS system sends the Welcome Message at or around the same time as the user message but cannot ensure which text message is received first by the recipient. In the case of Ms. Pathman, the Welcome Message was actually received from Yahoo before the two user messages (which were also SPAM text messages)

---

1136 (S.D. Cal. 2014).
[5] *See also* 152-5 (Exhibit A to Snyder Decl.).
[6] *See* Def.'s Memo., 3:10-13, which means that the consumer's cell phone number is already stored in the Optin database after a previous Welcome Message was sent to the cell phone number; *see generally,* Def.'s Memo., 4:15-18.
[7] *See* Def.'s Memo., 5:8-13.

*Left margin:* Kazerouni Law Group, APC — Costa Mesa, California

from an unknown Yahoo user. Pl.'s Opp., 20:25-27.

Lastly, Yahoo's PC2SMS is used by Yahoo to send a huge number of Welcome Messages to consumers' cell phones each month. *See* Dkt. No. 121-1, 10:27.

Therefore, based on all these pertinent facts concerning Yahoo's PC2SMS, the PC2SMS system sends text messages *without* "human intervention," and is therefore an ATDS under the TCPA as a matter of law.

### C. Yahoo Cannot Demonstrate Sufficient Human Intervention To Avoid A Finding That PC2SMS Is An ATDS

While Yahoo will no doubt maintain the argument that the Welcome Message is "triggered"[8] by a human, or in other words by a Yahoo user's sending of a personalized message using Yahoo's Instant Messenger, this is alone insufficient to find that PC2SMS does send text messages without human intervention. Indeed, two representatives of Yahoo have already testified under oath that the Welcome Message is *sent* without human intervention. *See* Pl.'s Opp., Dkt. No. 152, 8:13-9:18. Yahoo simply cannot defeat the human intervention element by programming its text messaging system to only send the automated marketing text message when a Yahoo user sends a personalized text message to a person whose cellular telephone number has not previously been sent a text message through PC2SMS, rather than to send the marketing text message at a time and date set by Yahoo. It is clear that Yahoo is attempting to use changes in technology to circumvent the protections afforded by the TCPA,[9] especially when

---

[8] Practically speaking, programming PC2SMS to send the Welcome Message along with a user message is really no different than Yahoo programming PC2SMS to send a marketing text message at a set date and time without a user message. Yahoo's pre-prepared text message is still sent automatically by the Yahoo's PC2SMS system.

[9] "The Commission in the 2003 TCPA Order also noted that, regardless of changes in technology, '[t]he basic function of such equipment [] has not changed—the capacity to dial numbers without human intervention.'" FCC's July 10 Ruling, n.

the Welcome Message contained an element of marketing.

Therefore, the human intervention requirement is satisfied, making PC2SMS an ATDS as a matter of law, for no reasonable jury could find under these facts that PC2SMS is anything other than an autodialer.

## III. AT THE VERY LEAST, YAHOO'S PC2SMS HAS THE "CAPACITY" TO SEND TEXT MESSAGES WITHOUT HUMAN INTERVENTION

The FCC's July 10 Ruling confirmed what this Court held on July 3, 2014, which is that the ATDS "capacity" issue is not limited to present capacity but includes potential capacity as well, *see Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1141-42 (S.D. Cal. 2014). Specifically, the FCC clarified on July 10, 2015 that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." FCC's July 10 Ruling, ¶ 16; *see id.* at ¶ 19. "Callers cannot avoid obtaining consumer consent for a robocall simply because they are not 'currently' or 'presently' dialing random or sequential phone numbers." *Id.* at p. 5, ¶ 2.

"By finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an autodialer, the Commission implicitly rejected any 'present use' or 'current capacity' test." *Id.* at ¶ 16. "[T]he TCPA's use of 'capacity' does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially, (*id.* at ¶ 15) and that "autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so. Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA" (*id.*). The FCC also noted that it "rejected the narrower interpretation of "capacity" (as 'current ability') when it held that predictive dialer equipment meets the autodialer definition." *Id.* at ¶ 16.

Therefore, assuming, *arguendo*, that Yahoo's PC2SMS does not have the

78.

present capacity to send text messages without human intervention (it does), it has, at the very least, the <u>capacity</u> to send text messages without human intervention.

For instance, Yahoo could reprogram the PC2SMS code to send a text message (such as the Welcome Message) to every single cell phone number in the Optin database at a time of Yahoo's choosing, regardless of any user message from a Yahoo user. *See* Choudhary Depo. at 61:9-62:17; 63:6-23, filed previously at Dkt. No. 152-3. This is sufficient to find the requisite ATDS capacity. Yahoo's PC2SMS system is an ATDS because it has the potential capacity to store cell phone numbers and send a text message to those stored numbers automatically, whether randomly, in sequential order, or from a list.[10] *See Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1135-36 (S.D. Cal. 2014). *See also* FCC's July 10 Ruling, ¶ 1 ("In the 2003 TCPA Order, the Commission held that predictive dialers met the definition of an autodialer because that 'hardware, when paired with certain software, has the capacity to store or produce numbers and <u>dial those numbers at random, in sequential order, or from a database of numbers</u>.'") (emphasis added).

The FCC points out that there are limits to what could be considered an ATDS, and gave an example of a rotary-dial phone as not being an ATDS. "Thus, for example, it might be theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of 'autodialer,' but such a possibility is too attenuated for us to find that a rotary-dial phone has the requisite 'capacity' and therefore is an autodialer." FCC's July 10 Ruling, ¶ 18. However, Yahoo's PC2SMS system is far from a simple rotary-dial phone, and is in line with the

---

[10] "The Commission stated that, even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition." FCC's July 10 Ruling, ¶ 12. "In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 18 FCC Rcd 14014, 14092, 2003 FCC LEXIS 3673, *203, 29 Comm. Reg. (P & F) 830.

FCC's meaning of an autodialer, for Yahoo's PC2SMS system sends automated text messages to many consumers throughout the United States (*see* Dkt. No. 121-1, 10:27).

In the 1992 TCPA Order, the Commission stated that it was rejecting definitions that fit "only a narrow set of circumstances" in favor of "broad definitions which best reflect[ed] legislative intent by accommodating the full range of telephone services and telemarketing practices." *Id*. at ¶ 16. The FCC previously "found it troubling that predictive dialers, like dialers that utilize random or sequential numbers instead of a list of numbers, retain the capacity to dial thousands of numbers in a short period of time...." *Id*. at ¶ 14.

In ¶ 20 of the FCC's July 10 Ruling, the commission further stated:

> <u>In light of our precedent and determination that Congress intended a broad definition of autodialer, we reject arguments that: the TCPA's language on its face does not support the claim that the TCPA was meant to apply to devices that need to be configured to store numbers or call sequentially</u>; a narrow reading of the TCPA is necessary to eliminate a lack of clarity regarding what constitutes an autodialer; and the term "capacity" implies present ability rather than future possibility.

FCC's July 10 Ruling, ¶ 20 (emphasis added).

There was concern expressed by the FCC that "little or no modern dialing equipment would fit the statutory definition of an autodialer" if the capacity issue were interpreted narrowly, such as the interpretation offered by Yahoo in its motion. *See id*. at ¶ 20. Regardless, the FCC has essentially rejected Yahoo's argument that PC2SMS is not an ATDS because it is not currently configured to send text messages without human intervention to cell phone numbers stored in the Optin database.

Consequently, Yahoo's PC2SMS is an ATDS as a matter of law, for it at least has the *capacity* to send text messages without human intervention, which is

all that is required.

## IV. CONCLUSION

In conclusion, the Court should find that Yahoo's PC2SMS is an ATDS as a matter of law, following the FCC's July 10, 2015 Ruling. Alternatively, the Court should find that whether Yahoo's PC2SMS is an ATDS (i.e., whether it sends or has the capacity to send automated text messages without human intervention) is a question of fact for a jury to decide, and therefore deny Yahoo's second motion for summary judgment.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: July 21, 2015                    By: /s/ Abbas Kazerounian
                                           Abbas Kazerounian
                                           *Attorney for Plaintiff*