

1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

RAFAEL DAVID SHERMAN and
SUSAN PATHMAN, Individually and
on Behalf of All Others Similarly
Situated,

12

13

                                    Plaintiffs,

14

        v.

15

YAHOO! Inc.,

16

                                    Defendant.

CASE NO. 13cv0041-GPC-WVG

**ORDER GRANTING LEAVE TO
FILE SURREPLY AND DENYING
MOTION FOR CLASS
CERTIFICATION**

[ECF Nos. 121, 141 & 144]

17
18

    Presently before the Court is Plaintiff Susan Pathman's Motion for Class

19

Certification.[1]  (ECF No. 121.)  Plaintiff's proposed Class consists of:

20

    All persons within the United States who were sent a text message on a
    telephone number assigned to cellular telephone provider AT&T and/or
    Cingular, by Defendant, that was substantially similar or identical to the
    text message described in Paragraph 18 of the First Amended Complaint,
    between May 1, 2013 and May 31, 2013, and whose cellular telephone
    number is associated with a Yahoo account.

21

22

23
24

(ECF No. 121 at 2.)  Paragraph 18 of the First Amended Complaint ("FAC") states:

25

    On or about May of 2013, YAHOO sent an unsolicited SPAM text
    message to Ms. Pathman (on its own accord) that read: "A Yahoo! User

26
27

──────────────

    [1] By order dated March 3, 2015, the Court dismissed without prejudice Plaintiff Rafael David
Sherman.  (ECF No. 119.)

28

1

2

has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms."

3

4

(ECF No. 64 ¶ 18.)  This text message will hereinafter be referred to as the "Welcome Message."

5

6

Defendant opposed Plaintiff's motion for class certification on May 8, 2015 (ECF No. 129) and Plaintiff filed a reply on May 22, 2015 (ECF No. 138).

7

8

9

10

11

12

13

In its opposition brief, Defendant relied on two expert reports filed in conjunction with its opposition.  (ECF No. 129 (Opposition brief), ECF No. 129-7 (Expert Report of Dr. Debra Aron), ECF No. 129-8 (Expert Report of Dr. Danah Boyd)).  Plaintiff objected to these export reports, and to Defendant's reliance on them in its opposition brief, in a Motion for Rule 37(c) Sanctions filed on May 22, 2015. (ECF No. 141-1.)  On June 1, 2015, Defendant filed its opposition to Plaintiff's objections.[2]  (ECF No. 146.)

14

15

16

17

On May 29, 2015, Defendant filed an *ex parte* application for leave to file a surreply to Plaintiff's motion for class certification.  (ECF No. 144.)  Plaintiff opposed this application on June 2, 2015 (ECF No. 147), and Defendant filed a reply brief on June 3, 2015 (ECF No. 148.)

18

19

20

21

A hearing on Plaintiff's motion was held on June 12, 2015.  (ECF No. 150.)  At the conclusion of the hearing, the Court afforded the parties an opportunity to file supplemental briefing after Plaintiff had an opportunity depose Dr. Aron and Dr. Boyd. (*Id.*)  The Court set an additional hearing.

22

23

24

On July 10, 2015, Plaintiff filed a supplemental brief.  (ECF No. 160.) Defendant filed a reply on July 17, 2015.  (ECF No. 176.)  The Court held a subsequent hearing on July 24, 2015.  (ECF No. 182.)

25

26

27

28

[2]  The Court afforded Defendant an opportunity to respond to the portion of Plaintiff's motion that sought to exclude the opinions and testimony of Dr. Aron and Dr. Boyd in the context of the motion for class certification and referred the remainder of the motion to the magistrate judge. (ECF No. 142.)

 Having considered the parties' submissions, oral arguments, and the applicable law, the Court **DENIES** Plaintiff's motion.

### BACKGROUND

This case arises from a text message Plaintiff received from an individual via Yahoo's Mobile SMS Messenger Service ("PC2SMS Service"), which allows registered Yahoo users to send instant messages to mobile devices from their computers through the Yahoo Messenger platform.  Specifically, in her FAC Plaintiff alleges that "[o]n or about May of 2013, Yahoo sent an unsolicited SPAM text message to Ms. Pathman (on its own accord) that read: 'A Yahoo! User has sent you a message. Reply to that SMS to respond.   Reply INFO to this SMS for help or go to y.ahoo.it/imsms.'" (ECF No. 64. ¶ 18.)  This message has been termed the "Welcome Message."   Plaintiff alleges that this unsolicited text message was sent using an "automatic telephone dialing system" ("ATDS"), as that term is defined by the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq.*  (*Id.* ¶ 21.) Plaintiff, individually and on behalf of those similarly situated, claims such messages violate provisions of the TCPA and seeks statutory damages of $500 per negligent violation and up to $1,500 per knowing or willful violation. (*Id.* ¶¶ 39-46.)

Defendant describes Yahoo Messenger as an instant messaging client that anyone can download and use free of charge by registering as a user with a Yahoo ID. (Decl. of Amir Doron Supp. Yahoo's Opp'n to Class Cert. ("Doron Decl.") ¶ 2, ECF No. 129-2.)  A registered Yahoo user can send an instant message to a friend's mobile device using the PC2SMS Service, which converts the instant message into an SMS message so that it can be transmitted to the mobile device.  (*Id.* ¶ 3.)  If the recipient wishes to reply from his or her mobile device, he or she can send an SMS message and the Yahoo user will receive it as an instant message.  (*Id.*)

In order to send a text message through the PC2SMS Service, the Yahoo user must either select the recipient's name from the user's Yahoo contact list (assuming that name is associated with a mobile number) or manually input the recipient's mobile

number in the Yahoo Messenger window.  (Decl. of Nitu Choudhary ("Choudhary Decl.") ¶ 7, ECF No. 152-4; Doron Decl. ¶ 7.)  Whenever a Yahoo user sends a message using the PC2SMS Service, Yahoo automatically checks a database called the Optin DB to see whether anyone has previously sent a message to that mobile number using the PC2SMS Service. (Choudhary Decl. ¶ 8; Doron Decl. ¶ 7.)  If that recipient's mobile number has never before received a text message sent via the PC2SMS Service, then Yahoo automatically appends the Welcome Message to the Yahoo user's message.[3,4]  (*Id.*)  At the same time, Yahoo saves the new mobile number in the Optin DB portion of the PC2SMS Service, which was created to prevent potential recipients from receiving multiple copies of the Welcome Message within the opt-out period. (Doron Decl. ¶¶ 8-9; Boyajian Decl., Ex. 1 (Doron Depo. 34:21-35:4), ECF No. 134-4.)

When a new user registers for a Yahoo account, they must agree to abide by Yahoo's terms of service.  (ECF No. 129 at 8; Andrews Decl. ¶ 3.)  According to Yahoo, some of its terms of service agreements over the years have included provisions which expressly provide consent for Yahoo to send text messages to its users.  (ECF No. 129 at 8; Andrews Decl. ¶16, Ex. A (Comms ATOS ¶ 2(e), Ex. C (uTOS ¶¶ 2, 24).)

///
///
///
///
///

---

[3]  Yahoo does, however, set an opt-out period for the Welcome Message. (Boyajian Decl., Ex. 1 (Doron Depo. 75:1-9), ECF No. 134-4.)  Thus, after a certain amount of time has passed (*i.e.*, after the opt-out period expires), a recipient could theoretically be sent a second Welcome Message. (*Id.*)

[4]  Plaintiff disputes Yahoo's assertion that the Welcome Message is appended to the user's message, arguing that it is sent as a separate text message. (*See e.g.*, ECF No. 152 at 2 (describing the Welcome Message as "a separate and additional text message")).  The parties agree, however, that either way, the Welcome Message is automatically generated and sent. (ECF No. 134-1 at 3; ECF No. 152 at 8-9.)  Because resolution of this issue is not necessary to decide the instant class certification motion, the Court declines to address it further.

- 4 -

# DISCUSSION

**A.     Plaintiff's Motion for Rule 37(c) Sanctions to Exclude Debra Aron and Danah Boyd as Expert Witnesses**

Plaintiff objects to Yahoo relying in its opposition brief on the reports of two expert witnesses (Dr. Aron and Dr. Boyd) who were not previously disclosed during class discovery.  (ECF No. 141-1 at 2-3.)  By doing so, Plaintiff argues Yahoo denied her the opportunity to depose the experts or otherwise prepare for their testimony.  (*Id.*) Plaintiff asks the Court to strike the Aron and Boyd declarations from the opposition.[5] (*Id.* at 3.)

Rule 26(a) requires parties to disclose the identity of individuals with discoverable information as well as the subject of that information.  Fed. R. Civ. P. 26(a)(1).  The rule also requires parties to disclose the identity of any retained expert witness and provide a written report.  Fed. R. Civ. P. 26(a)(2).  If the witness is not a retained expert, the party offering the testimony must disclose the subject matter of the testimony and a summary of the facts and opinions of the testimony.  Fed. R. Civ. P. 26(a)(2)(C).  Failure to abide by these disclosure requirements may result in exclusion of the evidence pursuant to Rule 37, unless the failure to disclose was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008).

The Court indicated at the June 12, 2015 hearing, it was inclined to consider the reports.  However, in order to allow Plaintiff time to depose both experts and respond to their conclusions, the Court set another hearing and provided time for the parties to file supplemental briefing.  In light of these procedural protections, the Court finds that Yahoo's failure to disclose these experts was harmless and **DENIES** Plaintiff's request to strike the declarations from Yahoo's opposition briefing.

---

[5] Plaintiff seeks other relief as well, but the Court has referred consideration of those issues to the magistrate judge.  (ECF No. 142.)

**B.   Defendant's *Ex Parte* Application for Leave to File Surreply in Opposition to Plaintiff's Motion for Class Certification**

Yahoo requested permission to file a surreply because it contends that Plaintiff raised new arguments in her reply brief and made several misrepresentations and omissions. (ECF No. 144.) Yahoo attached its proposed surreply to its application. (ECF No. 144-2.) Plaintiff objected to Yahoo's characterization of her reply brief and to Yahoo's application for permission to file a surreply. (ECF No. 147.) In her briefing, Plaintiff responded to the issues addressed in Yahoo's surreply. (*Id.*) Yahoo filed a reply. (ECF No. 148.)

Courts are not obligated to consider arguments first presented in reply briefs. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). However, district courts have broad discretion to do so. *Lane v. Dept. of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (*citing Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1201-02 (9th Cir. 2001)). A court admitting arguments submitted for the first time in a reply brief should protect the non-moving party against unfair surprises by allowing it an opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The court may choose to either "provide oral argument to the non-moving party, or allow the non-moving party to file a sur-reply." *Lewis v. Gotham Ins. Co.*, No. 09CV252 L (POR), 2009 WL 3698028, at *1 (S.D. Cal. Feb. 4, 2010).

Yahoo contends that it must be allowed the opportunity to respond to matters Plaintiff presented for the first time in its reply brief, including Plaintiff's: (1) newly-proposed method of ascertaining a class through a reverse phone number lookup, (2) misrepresentations and omissions, (3) newly-proposed class definition limiting the class to "those users who opened an account prior to being sent the Welcome Message," (4) newly-proposed class definition limiting the class to "those AT&T customers who are not part of a group account," (5) newly-proposed class definition limiting the class to "those individuals for whom sufficient contact information is in possession of Yahoo based on its own business records," and (6) newly-proposed class

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

definition limiting the class to "'active' account holders." (ECF No. 144.) Plaintiff responds that its arguments are not "new," but merely responsive to arguments and evidence presented in Yahoo's opposition. (ECF No. 147 at 1.)

Having reviewed the briefing submitted, the Court will allow Yahoo to file its surreply in the interest of fairness. While Plaintiff's arguments in her reply brief are largely responsive to issues raised by Yahoo in its opposition, the Court finds it appropriate to allow Yahoo an opportunity to respond to Plaintiff's proposed limitations on the class and further explanation as to methods of ascertaining the class. The Court will further allow the responsive briefing to Yahoo's application to file a surreply (ECF Nos. 147, 148).

## C.   Plaintiff's Motion for Class Certification

In this case, Plaintiff seeks to prove that Defendant violated the TCPA by appending its "Welcome Message" text message to text messages Yahoo users sent, via the Yahoo Messenger service, to individuals who have never before received a text via this system. (ECF No. 121-1 at 2.) Under the TCPA, it is unlawful in the United States:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– . . . to any telephone number assigned to . . . [a] cellular telephone service . . .

47 U.S.C. § 227(b)(1)(A)(iii). While the parties dispute whether "prior express consent" is an element of Plaintiff's claim or an affirmative defense, it is clear that the burden of showing that the proposed class members share common issues of law or fact falls to Plaintiff.

### 1.   Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and

suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted).  To fit within the exception, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S. Ct. at 2551-52).

Rule 23 contains two sets of requirements.  First, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal quotation marks and citations omitted).  Second, "[w]here a putative class satisfies all four requirements of 23(a), it still must meet at least one of the three additional requirements outlined in 23(b)." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

On a motion for class certification, the Court is required to "examine the merits of the underlying claim . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 n.8 (9th Cir. 2011) (citations omitted).

## 2.    Ascertainability

As a threshold issue, Yahoo argues that Plaintiff's class is not ascertainable because Plaintiff has not demonstrated that any source, or combination of sources, of information exists from which class members may be identified.  (ECF No. 129 at 12.)  Although Rule 23 contains no explicit ascertainability requirement, courts in this circuit routinely require plaintiffs to demonstrate ascertainability.  *See Jones v. ConAgra Foods, Inc.*, No. C-12-01633-CRB, 2014 WL 2702726, at *8 (N.D. Cal. June 13, 2014).  "A class is ascertainable if it identifies a group of unnamed plaintiffs by

describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-CV-0964-GPC-DHB, 2013 WL 3746118, at *5 (S.D. Cal. July 15, 2013) (quoting *Thomasson v. GC Services Ltd. P'ship*, 275 F.R.D. 309, 313 (S.D. Cal. 2011)). The plaintiff must provide a means of establishing membership that utilizes objective, verifiable criteria. *Jones*, 2014 WL 2702726, at *8 (citing *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1088-90 (N.D. Cal. 2011)). "Without an objective, reliable way to ascertain class membership, the class quickly would become unmanageable, and the preclusive effect of final judgment would be easy to evade." *Xavier*, 787 F. Supp. 2d at 1089; *see also Gannon v. Network Tel. Servs., Inc.*, No. CV-12-9777-RGK-PJWX, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013) (finding a proposed class "unascertainable and unidentifiable" where the court could not "determine whether an individual is part of the class without extensive individual inquiry into the merits of [the] [p]laintiff's claim, which ultimately [made] identification of the class administratively unfeasible").

Plaintiff proposes to ascertain the putative class using a three-step process. According to Plaintiff, the first step—obtaining Yahoo's records from the Optin DB showing the time and date that it sent each Welcome Message to the corresponding mobile number during the proposed class period—is done. (ECF No. 121-1 at 10-11.) The second step is to limit the unique mobile numbers to those assigned to AT&T and/or Cingular.[6] (*Id.* at 11.) Plaintiff contends that this step also has been completed, as Yahoo's records show to which carrier each cell phone is assigned. (*Id.*) Finally, Plaintiff intends to compare the mobile numbers listed in the Optin DB with information obtained from Yahoo's UDB database in order to obtain names, email addresses, and mailing address information for the account holders who were sent the

---

[6] Plaintiff represents that AT&T purchased Cingular. (ECF No. 11.) Hereafter, the Court will simply refer to the class as containing mobile numbers assigned to AT&T.

1
2
3
4
5
6

Welcome Message.  (*Id.* at 11-12.)  To the extent Yahoo's records are not complete or reliable, Plaintiff intends to subpoena AT&T for the complete name and address information corresponding to each mobile number from the Optin DB.  (*Id.* at 12.)  As an alternative, Plaintiff proposes sending class notice to members' Yahoo email accounts.  (*Id.*)  Plaintiff also offers as alternatives using a reverse telephone number lookup, direct mail notice, or national publication.  (ECF No. 138 at 3-4.)

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Yahoo argues that Plaintiff's process is unworkable for several reasons.  First, the UDB was designed to allow Yahoo users to preserve privacy, so all that users were required to provide in order to set up an account was a user ID (not necessarily their real names) and a Yahoo email address.  (ECF No. 129 at 12-13.)  Yahoo contends that the email addresses may not currently be active.  (*Id.*)  Additionally, even in the case where a phone number is associated with a user account, the number in the UDB database may no longer be owned by that account holder[7] or the association may be inaccurate (e.g., Pathman's phone number was associated with two Yahoo accounts, only one of which was hers).  (*Id.* at 13-14.)  In Pathman's case, Yahoo contends it only learned through deposing Pathman and reviewing documents she produced that Pathman had no relationship with the other user with whom her phone number is associated.  (*Id.* at 14.)  Thus, Yahoo submits that cross-referencing the Optin DB and UDB is unlikely to yield complete, much less reliable, contact information for putative class members.

21
22
23
24
25

In regard to Plaintiff's proposal to subpoena AT&T records, Yahoo notes that Plaintiff failed to do so during class discovery, which is now closed.  (*Id.* at 16.)  Additionally, Yahoo anticipates that AT&T will object to disclosing this information under California privacy law, as carriers have in other cases.  (*Id.*; ECF No. 144-2 at 6.)  Even if it does agree to provide the information Plaintiff seeks, Yahoo contends

26
27
28

---

[7] In support of this argument, Yahoo provides statistics as to the frequency with which people in the United States change their phone numbers.  (ECF No. 129 at 13.)

that this will not allow Plaintiff to ascertain the class because the subscriber may not be the person who received the text. (ECF No. 129 at 16.)  For a group account, AT&T only requires the name of the account holder, not all of the user names.  (Aron Decl. ¶ 32.)  Yahoo submits that in 2013, at least 40% of AT&T's total subscribers were on family or multiline plans (which would include business plans).  (ECF No. 129 at 16 n.11; Aron Decl. ¶ 36.)  Another 7% of total subscribers in 2013 had pre-paid phones. (ECF No. 129 at 17; Aron Decl. ¶ 37.)  AT&T does not require a name or address in order to purchase a pre-paid phone.  (*Id.*)  Some other percentage of phones may be owned by a parent, relative, or friend of the putative class member.  (ECF No. 129 at 17; Aron Decl. ¶ 38.)  Therefore, Yahoo argues that Plaintiff's proposal of ascertaining the class from AT&T records also is unlikely to yield accurate and complete results.

As to Plaintiff's proposal to email proposed class members and have them self-identify, Yahoo points out that class members are unlikely to recall receiving one particular, non-personal message two years ago.  (ECF No. 129 at 18.)  Moreover, because people tend to delete old text messages or switch phones without copying over old texts, putative class members are unlikely to have retained the Welcome Message such that they could verify their membership in the class.  (*Id.*)

Finally, Yahoo contends that reverse lookup systems are fraught with difficulties and are unlikely to provide accurate contact information two years later.[8]  (ECF No.

---

[8]  In support of its Opposition, Yahoo requests that the Court take judicial notice of screen shots of reverse phone number lookup results from five online services–Accurint, Lexis, Spokeo, Spydialer, and Instantcheckmate–for a particular individual who likely miskeyed his/her phone number (which was known through Plaintiff's deposition testimony) in order to demonstrate that users may miskey their phone numbers when providing their numbers to Yahoo. (ECF No. 129-9; *see* ECF 144-2 at 2-5.)  Plaintiff opposes Yahoo's requests.  (ECF No. 138-8.)  Federal Rule of Evidence 201(b) provides that a court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  It is "not uncommon for courts to take judicial notice of factual information found on the world wide web.*" O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (citations omitted).  However, "private corporate websites . . . generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' . . . that our judicial notice rule contemplates."  *See Victaulic Co. v. Tieman*, 499 F.3d 227, 237 (3d Cir.2007); *Azco Biotech Inc. v. Qiagen, N.V.*, No. 12-CV-2599-BEN-DHB, 2013 WL 4500782, at *3 (S.D. Cal. Aug. 20, 2013); *Evenchik v. Avis Rent A Car Sys., LLC*, No. 12-CV-61 BEN-DHB, 2012 WL 4111382, at *1 (S.D. Cal.

144-2 at 3-5.)

Having thoroughly reviewed all of Plaintiff's proposed methods of ascertaining the class, the Court finds that Plaintiff has not met her burden of demonstrating that there is an administratively feasible method of identifying the putative class members. While it appears that Plaintiff has obtained a complete list of mobile numbers that received the Welcome Message between May 1, 2013 and May 31, 2013, and which are assigned to AT&T, this does not end the inquiry.  As Plaintiff acknowledges, the the Optin DB from which these numbers were drawn does not contain the names, email addresses, or postal addresses of the individuals who owned those mobile numbers during the class period.  Without this information, the class members' identities cannot be ascertained, nor can these individuals be contacted.  Plaintiff has not shown that her initial proposal for overcoming this hurdle—cross-referencing these phone numbers with information contained in Yahoo's UDB—is likely to provide complete or even accurate contact information for class members.  As Yahoo points out, whether Yahoo users chose to provide their true name  or contact information (including their mobile telephone number) to Yahoo in conjunction with their account was entirely voluntary.  Even if they did, that information may not be current at this point.  Yahoo has shown that in numerous instances (including in Pathman's case), a single mobile number also may be associated with multiple Yahoo accounts (either because someone miskeyed his or her number or because the phone number has been reassigned to a new person).  Thus, even where there is a match between a called mobile telephone number and a Yahoo account, further individualized inquiry would be needed (as it was in Pathman's case) to determine which account holder owned the number in May of 2013.

Plaintiff's belated proposal to utilize a reverse lookup also does not provide

---

Sept. 17, 2012) ("Screen shots of web pages, especially because of the ever-changing content, are not typically the type of document containing facts, the accuracy of which is capable of ready determination.") (citing *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167-68 (S.D. Cal. 2010)).  The Court declines Yahoo's request to take judicial notice of the reports and web page result screen shots under Rule 201.

13cv0041-GPC-WVG

objective, verifiable criteria for identifying class members.  While this system might provide some information as to the current users of the phone numbers, Plaintiff has not explained how it would verify that the current owners of the numbers were the owners over two and a half years ago.  Furthermore, Plaintiff herself has called into question the accuracy of reverse lookup systems.[9]

Plaintiff's last resort is to issue a subpoena to AT&T for subscriber records.  As an initial matter, Plaintiff has not demonstrated that she has any likelihood of success via this route.  In several other cases, cellular carriers have refused to turn over similar records pertaining to California customers in TCPA cases based on the right to privacy established by California Public Utilities Code section 2891(a)(4)[10] and Plaintiff offers no explanation as to why AT&T will turn over subscriber records here.  Instead, Plaintiff asserts that (1) in *Johnson v. Yahoo*, 14-cv-2028 (N.D. Ill.) (the pending Illinois case that is similar to this one), Judge Shah ordered T-Mobile to produce a declaration as to whether it had the information Plaintiff requested and (2) Dr. Aron stated in her declaration that her understanding based on a conversation between her office and AT&T was that "AT&T would need a court order" for a large production request.  (Pl.'s Suppl. Br. Supp. Mot. for Class Cert., ECF No. 160 at 7.)  Neither of these assertions is evidence that AT&T will surrender the subscriber records.  Thus, the Court has no reason to believe that AT&T would, in fact, turn over the user information Plaintiff requires.

Even if AT&T did, this method of ascertaining the class is riddled with gaps.  According to Dr. Aron, more than 40% of AT&T subscribers are on group plans.  Thus,

---

[9]  In objecting to Yahoo's request that the Court take judicial notice of search results from five reverse phone number lookup websites, Plaintiff argued "[t]he search results do not prove 100% that a given cell phone number belongs to the indicated individual."  (ECF No. 138-8 at 3.)

[10]  This California privacy law provides: "[n]o telephone or telegraph corporation shall make available to any other person or corporation, without first obtaining the residential subscriber's consent, in writing, any of the following information . . . [d]emographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed."  Cal. Pub. Util. Code § 2891(a)(4).

the subscriber to the group plan may well not be the person who owned the phone in 2013. While a parent subscriber most likely could provide notice to his child, if the subscriber was a business, there is a reasonable chance the employee who used the phone in 2013 is no longer with the company or simply cannot be identified.

Finally, to the extent Plaintiff submits that some of the confusion could be cleared up by sending email to the Yahoo email addresses associated with numbers that were sent the Welcome Message during the class period (or by sending direct mail or publishing a notice nationally), the Court finds these methods equally unworkable. Even if the notice were to reach the right individuals (and there are many reasons this might not be the case), those people would have to recall whether or not they received a single, non-personal email during a one month period over two years ago. This is highly improbable, as is the likelihood that they would have retained text messages from that long ago, such that they could confirm by reviewing the data on their phones.

In sum, the Court finds that even if Plaintiff were to utilize all of these methods and attempt to cross-reference massive amounts of data to identify class members, Plaintiff still would be left with a data set of questionable reliability that covered only some unknown fraction of the putative class. Plaintiff's burden is to provide an objective, reliable, and administratively feasible method of ascertaining the class. *Xavier*, 787 F. Supp. 2d at 1089; *Gannon*, 2013 WL 2450199, at *2. Plaintiff has not met her burden. That being said, the Court's conclusion does not dispose of the motion because a "lack of ascertainability alone will generally not scuttle class certification." *Jones*, 2014 WL 2702726, at *11 (quoting *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12, 2012)).[11] However, these deficiencies will be

---

[11] On August 4, 2015, Plaintiff filed Notice of Recent Authority in Support of Motion for Class Certification. (ECF 183.) In *Mullins v. Direct Digital, LLC*, 2015 WL 4546159 (7th Cir. July 28, 2015), Judge Hamilton rejected the heightened ascertainability standard that the Third Circuit and other courts have used in denying class certification. As indicated above, the Court does not dispose of the certification motion on the basis of ascertainability. Instead, the Court addresses the policy concerns motivating the heightened ascertainability requirements by "applying carefully the explicit requirements of Rule 23(a) and especially (b)(3). *Id.* at *4.

addressed further under the predominance and superiority prongs of Rule 23(b)(3).

### 3. Typicality and Adequacy

Under Rule 23(a), Plaintiff must satisfy the requirements of numerosity, commonality, typicality, and adequate representation. Yahoo does not appear to object to Plaintiff's proposed class on numerosity and commonality grounds, but does contend that Plaintiff is neither a typical nor adequate class representative because of her unique consent profile. (ECF No. 129 at 33-35.)

Under the third Rule 23(a) requirement, the Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation omitted).

Rule 23(a)(4) requires the representative parties to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

Yahoo contends that Plaintiff will not be a typical or adequate class representative because the manner in which she provided consent will only coincide with a select group of members of the putative class. (ECF No. 129 at 33.) As a result,

she may be incentivized to litigate the case in a manner favorable to her consent profile or to settle to the detriment of other class members.  (*Id.*)  Yahoo notes that Plaintiff, in fact, has a history of settling putative class action lawsuits, including TCPA cases, prior to certification.  (*Id.* at 34.)

According to Yahoo, a Yahoo user[12] can provide prior express consent in several ways.[13]  First, a Yahoo user can agree to Yahoo's terms of service.  (ECF No. 129 at 20-21.)  Its "Universal Terms of Service agreement ("uTOS") governs every user's relationship with Yahoo and their use of all products and services offered by Yahoo."  (*Id.* at 7; Decl. of J. Andrews ("Andrews Decl.") ¶ 4.)  Users also may be required to agree to Yahoo's Communications Additional Terms of Service agreement ("Comms ATOS") that incorporates the uTOS and applies to Yahoo Mail and Yahoo Messenger (which includes the PC2SMS Service).  (ECF No. 129 at 7; Andrews Decl. ¶ 5.)  Since August 2007, Yahoo submits that the uTOS has expressly provided consent for Yahoo to send text messages to its users as follows: "Yahoo! may provide you with notices, including those regarding changes to the TOS, including but not limited to email, regular mail, SMS, MMS, text message . . . ."  (ECF No. 129 at 8; Andrews Decl. ¶16, Ex. C (uTOS ¶ 24).)  Given that Plaintiff considers the messages to be spam, as opposed to "notices," the Court notes that the uTOS also requires users to agree to

---

[12] Plaintiff's class is now limited to individuals "whose cellular telephone number is associated with a Yahoo account."  In other words, all class members are now Yahoo users.

[13] According to Yahoo, prior express consent exempts Yahoo from TCPA liability.  (ECF No. 129 at 20-21.)  Yahoo cites *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014).  Specifically, Yahoo quotes Judge Koh's finding that:

> Yahoo is correct that Yahoo Mail users agreed to the ATOS. When registering for Yahoo Mail, users must click a "Create Account" button that appears below the sentence: "I agree to the Yahoo Terms and Privacy." [] The "Yahoo Terms" hyperlink directs users to view the ATOS. . . . Thus, it is clear based on the allegations in the Complaint that Yahoo Mail users agreed to at least the ATOS and Privacy Policy when they created an account. . . . ¶ The Court concludes that the ATOS establishes explicit consent by Yahoo Mail users to Yahoo's conduct.

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1028-29 (citations omitted.)

receive "advertisements" and other types of "communications" via "various communication tools." (ECF No. 129 at 8; Andrews Decl., Ex. C (uTOS ¶ 2).) The Comms ATOS also includes a similar provision, requiring agreement to receive "certain communications from Yahoo!, such as service announcements and administrative messages." (ECF No. 129 at 8; Andrews Decl., Ex. A (Comms ATOS ¶ 2(e)).)

According to Yahoo, "[a]ll users must expressly assent to one or more of a version of Yahoo's terms of service agreement(s) at registration." (ECF No. 129 at 8; Andrews Decl. ¶ 3.) However, determining which agreement each user consented to requires an individualized determination, because many users have consented to more than one version or type of service agreement, have reaffirmed their consent at various points, have installed an application (which requires consent to a service agreement), or have opened new Yahoo accounts and agreed to different terms of service at that time.[14] (ECF No. 129 at 8-9; Andrews Decl. ¶¶ 18-19.) Even assuming Plaintiff is correct that the terms of the service agreements have not changed since late 2008 (*see* ECF No.138 at 6 n.5), some users may have registered for a Yahoo account prior to August 2007 (i.e., before the uTOS has expressly provided consent for Yahoo to send text messages).

Yahoo contends that users also may consent to receive text messages by voluntarily providing their cellular telephone number to Yahoo in connection with their accounts.[15] (ECF No. 22-23.) Finally, Yahoo argues that users may provide consent

---

[14] As set forth in the Declaration of Amir Doron ("Doron Decl."), filed in support of Defendant's opposition, Yahoo users can be divided into four groups based on the date they registered and the terms of service they agreed to. (Doron Decl. ¶ 27.) Based on his calculations of the various consent options available within each of these four groups, the total number of possible permutations of consent profiles is about 200. (*Id.* ¶¶ 28-31.)

[15] In support of this argument, Yahoo cites the *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992), wherein the Federal Communications Commission ("FCC") stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." Yahoo also cites *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1107

1
2
3

through an intermediary. (*Id.* at 24-25.) The theory behind this argument is that, for instance, a user who regularly corresponds with a friend via text message, consented through that friend to receive the Welcome Message from her. (*Id.* at 25.)

4
5
6
7
8
9
10
11
12

According to Yahoo, Pathman created her first Yahoo account in October of 2000 and her second Yahoo account in March of 2013, and therefore, agreed to the uTOS and Comms ATOS agreements in effect at those times. (ECF No. 129 at 9; Doron Decl. ¶¶ 35-36; Andrews Decl. ¶¶ 7, 10.) Yahoo asserts that she also agreed to the Comms ATOS in October 2012 during the migration to the new mail platform. (ECF No. 129 at 9-10; Doron Decl. ¶35; Andrews Decl. ¶ 19.) On May 1, 2013, Pathman received the Welcome Message. (Decl. of Susan Pathman ¶ 4, ECF No. 121-26.) In November of 2013, Pathman added her mobile number to one of her Yahoo accounts. (ECF No. 129 at 10; Doron Decl. ¶ 35.)

13
14
15
16
17
18
19

This profile would put Plaintiff at odds with class members in several other consent groups. For instance, whereas Plaintiff may have consented to receive the Welcome Message by agreeing to the uTOS and/or Comms ATOS in 2012 and March 2013 (both of which occurred prior to her receiving the Welcome Message)[16], class members who (1) had not signed up for Yahoo accounts prior to receiving the Welcome Message[17] or (2) had signed up for Yahoo accounts prior to August 2007 may not have consented. Similarly, class members who voluntarily provided their phone

20
21

_____

22
23
24

(C.D. Cal. 2014), wherein the court found that the plaintiff "consented to be contacted on her cellphone about flight-related matters" when she "provided her cellphone number to Hawaiian Airlines voluntarily." The single text message subsequently sent to her phone by Hawaiian Airlines' third-party vendor offering to provide the plaintiff with flight information thus "fell within the scope of her 'prior express consent.'" *Baird*, 995 F. Supp. 2d at 1107. For that reason, the court granted the defendant summary judgment on its TCPA claim. *Id.*

25
26

[16]  The Court is not making a finding on the issue of consent.

27
28

[17]  Notably, this group does not constitute an insignificant number of people. According to the Doron Declaration, "[a]t least 69% of the Yahoo account-holders Pathman contends make up the class fall into the Post-Welcome Message Registration Group." (Doron Decl. ¶ 31, ECF No. 129-2.)

number to Yahoo prior to receiving the Welcome Message may be found to have consented, whereas Plaintiff (who provided hers after receiving the Welcome Message) would not. These distinctions put Plaintiff in a position of having interests that are not typical of the entire class and, thus, being preoccupied with unique defenses. *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *cert. denied*, 498 U.S. 1025 (1991)) (holding that "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it'"). Moreover, Plaintiff's incentive to settle the case would be based on considerations not representative of the entire class. The purpose of the adequacy and typicality requirements is to ensure that Plaintiff's interests are aligned with those of the class, *Hanon*, 976 F.2d at 508; *Hanlon*, 150 F.3d at 1020, and the Court finds that Plaintiff's are not.

### 4.    Predominance

Rule 23(b)(3) requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, "the common questions must be 'a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication.'" *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (quoting *Hanlon.*, 150 F.3d at 1022).

Plaintiff asserts that the predominance requirement is satisfied because the principal factual and legal issues common to the class are whether Yahoo sent spam text messages to the class members without prior express consent. (ECF No. 121-1 at 20.) To the extent Yahoo raises as an affirmative defense that the class members consented to receiving the Welcome Message, Plaintiff contends that Yahoo's consent theories either apply to the class as a whole, or fail outright. (*Id.*)

Yahoo counters that, regardless of whether consent is an affirmative defense or an element of Plaintiff's claim, Plaintiff bears the burden of proving that the issue of

1   consent can be determined by generalized proof.  (ECF No. 129 at 20.)   Yahoo

2   contends the consent theories do not apply on a class wide basis.  (*Id.*)

3        In its discussion of the ascertainability of the class, the Court identified the holes

4   in Plaintiff's method of identifying class members.  In addition to calling into question

5   how the class might be ascertained, that kind of individualized inquiry also suggests

6   that common questions do not predominate over individual ones. As illustrated in the

7   preceding section, Yahoo has set forth several plausible consent theories that apply

8   differently to different class members.  The problem highlighted by these various

9   methods of expressing consent is that individualized inquiry would be required to

10  determine the consent profile of each putative class member.  At a minimum, a

11  determination would need to be made as to when each class member agreed to the

12  uTOS or the Comms ATOS (assuming both are found to contain legally sufficient

13  consent clauses), because the analysis would differ based on whether the user

14  consented before August 2007, or between August 2007 and his or her receipt of the

15  Welcome Message, or after receiving the Welcome Message.  A determination of

16  whether the user voluntarily provided his or her phone number to Yahoo prior to

17  receiving the Welcome Message also would be necessary.  Though the Court has

18  doubts about the viability of Yahoo's theory of consent via an intermediary, if

19  accepted, this too would require individualized determination as to who sent the

20  Welcome Message to each class member and of whether the class member had in some

21  fashion consented to receive messages from that individual.

22        Courts have held that similarly individualized determinations defeated

23  predominance.  In *Berger*, the putative class challenged Home Depot's policy of

24  automatically including a ten percent surcharge for a damage waiver on all bills for tool

25  rentals.  *Berger*, 741 F.3d at 1064.  In affirming the district court's denial of class

26  certification, the Ninth Circuit highlighted that "[e]ach of the *five contracts* used by

27  Home Depot requires an independent legal analysis to determine whether the language

28  and design of that contract did or did not suffice to alert customers that the damage

waiver was an optional purchase." *Id.* at 1069 (emphasis added). Given this necessity for individualized assessments, the court confirmed that the plaintiff had failed to show that common questions shared by the class predominated over individual questions of contract determination. *Id.* In *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008), the class claimed the defendant violated the TCPA by sending unsolicited advertisements from one fax machine to another. The Fifth Circuit reversed the district court's certification of the class, finding that the plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class involved in this case." 541 F.3d at 329. Finally, in *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578-79 (S.D. Cal. 2013), also a TCPA case, the court concluded that the varying circumstances under which putative class members provided their cellular telephone numbers to Hilton (and did or did not consent in doing so), precluded a finding that the plaintiff had satisfied the predominance requirement. The same is true in this case. Plaintiff has failed to show that any theory of generalized proof overcomes the need for individualized determinations of if, and when, the putative class members gave prior express consent to receive the Welcome Message.[18]

In sum, the Court finds that individualized issues of consent predominate over common questions.

### 5.   Superiority

Rule 23(b)(3) requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

---

[18]  The FCC's most recent Declaratory Ruling and Order interpreting the TCPA may further increase the level of individual inquiry necessary to establish whether or not consent to send text messages has been obtained.  There, the FCC ruled that "consumers have a right to revoke consent, using any reasonable method including orally or in writing."  *See In re the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72 (CG Dkt. No. 02-278, WC Dkt. No. 07-135) at ¶ 64  (July 10, 2015), available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.  It further concluded that revocation of consent occurs where the sender message "kn[ew] or ha[d] reason to know that the other is no longer willing for him to continue" sending text messages. Id. ¶ 58 n.223.

- 21 -

23(b)(3). To determine whether a class action is the superior method of adjudicating the dispute, a court must consider the likely difficulties in managing the proposed class action.  Fed. R. Civ. P. 23(b)(3)(D); *see Zinser v. Accufix Research Inst*., 253 F.3d 1180, 1189 (9th Cir. 2001). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (noting that in some cases, "litigation costs would dwarf potential recovery") (internal citation omitted).

Yahoo raises significant concerns regarding the superiority of a class action in this case.  Given the predominance and ascertainability issues identified above, the Court agrees that there serious questions exist whether a class action is superior to individual actions.  Finally, the Court has concerns based upon how narrowly Plaintiff has drawn the class.  In the original complaint, the class encompassed "the four years prior to the filing of this Complaint" and all cellular providers.  (ECF No. 1 at ¶ 24.) Since then, Plaintiff has narrowed the class down to one month in 2013 and one cellular service provider.   Given that Rule 23 seeks to ensure fair and efficient resolution of the controversy, Plaintiff's highly circumscribed class definition seems to offend the very purpose of the rule.  Even if Yahoo were to prevail in this action, it still would be subject to suit for every other month it sent the Welcome Message and even for the same month in 2013, to the extent the phone numbers involved were assigned to different cellular providers.  This opens up the distinct possibility of inconsistent verdicts, which is precisely what Rule 23 was designed to avoid. *See, e.g.,* Fed. R. Civ. P. 23(a) (allowing a class to be maintained if prosecuting separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class).  According to Plaintiff, Yahoo already has been sued in at least four other courts (including the *Johnson* case), which demonstrates that this concern is not speculative.

The Court, therefore, finds that class treatment is not the superior method for

resolving the instant dispute.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not defined an ascertainable class and has failed to satisfy the typicality, adequacy, superiority, and predominance requirements of Rule 23.  Plaintiff's motion for class certification, therefore, is **DENIED**.

**IT IS SO ORDERED**.


DATED:  September 23, 2015

HON. GONZALO P. CURIEL
United States District Judge

13cv0041-GPC-WVG