UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL DAVID SHERMAN and SUSAN PATHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>YAHOO! Inc.,<br><br>Defendant. | CASE NO. 13cv0041-GPC-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 134] |

Before the Court is Defendant Yahoo! Inc.'s ("Yahoo") second motion for summary judgment. (ECF No. 134.) The motion has been fully briefed. (ECF Nos. 152, 157, 180, 181.) Based on the briefing and oral arguments of counsel, the Court hereby DENIES Defendant's motion for summary judgment.

**BACKGROUND**

This case arises from a text message Plaintiff Susan Pathman ("Plaintiff") received from an individual via Yahoo's Mobile SMS Messenger Service ("PC2SMS Service"), which allows registered Yahoo users to send instant messages to mobile devices from their computers through the Yahoo Messenger platform. Specifically, in her First Amended Complaint ("FAC") Plaintiff alleges that "[o]n or about May of 2013, Yahoo sent an unsolicited SPAM text message to Ms. Pathman (on its own

accord) that read: 'A Yahoo! User has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms.'" (ECF No. 64. ¶ 18.) This message has been termed the "Welcome Message." Plaintiff alleges that this unsolicited text message was sent using an "automatic telephone dialing system" ("ATDS"), as that term is defined by the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq.* (*Id.* ¶ 21.) Plaintiff, individually and on behalf of those similarly situated, claims such messages violate provisions of the TCPA and seeks statutory damages of $500 per negligent violation and up to $1,500 per knowing or willful violation. (*Id.* ¶¶ 39-46.)

Defendant describes Yahoo Messenger as an instant messaging client that anyone can download and use free of charge by registering as a user with a Yahoo ID. (Decl. of Amir Doron Supp. Yahoo's Opp'n to Class Cert. ("Doron Decl.") ¶ 2, ECF No. 129-2.) A registered Yahoo user can send an instant message to a friend's mobile device using the PC2SMS Service, which converts the instant message into an SMS message so that it can be transmitted to the mobile device. (*Id.* ¶ 3.) If the recipient wishes to reply from his or her mobile device, he or she can send an SMS message and the Yahoo user will receive it as an instant message. (*Id.*)

In order to send a text message through the PC2SMS Service, the Yahoo user must either select the recipient's name from the user's Yahoo contact list which is stored on a Yahoo server (assuming that name is associated with a mobile number) or manually input the recipient's mobile number in the Yahoo Messenger window. (Decl. of Nitu Choudhary ("Choudhary Decl.") ¶ 7, ECF No. 152-4; Doron Decl. ¶ 7.) Whenever a Yahoo user sends a message using the PC2SMS Service, Yahoo automatically checks a database called the Optin DB to see whether anyone has previously sent a message to that mobile number using the PC2SMS Service. (Choudhary Decl. ¶ 8; Doron Decl. ¶ 7.) If that recipient's mobile number has never before received a text message sent via the PC2SMS Service, then Yahoo automatically appends the Welcome Message to the Yahoo user's message. (*Id.*) Yahoo does,

however, set an opt-out period for the Welcome Message. (Boyajian Decl., Ex. 1 (Doron Depo. 75:1-9), ECF No. 134-4.)  Thus, after a certain amount of time has passed (i.e. after the opt-out period expires), a recipient could theoretically be sent a second Welcome Message. (*Id*.) Plaintiff disputes Yahoo's assertion that the Welcome Message is appended to the user's message, arguing that it is sent as a separate text message. (See e.g., ECF No. 152 at 2 (describing the Welcome Message as "a separate and additional text message")).  The parties agree, however, that either way, the Welcome Message is automatically generated and sent. (ECF No. 134-1 at 3; ECF No. 152 at 8-9.)  At the same time, Yahoo saves the new mobile number in the Optin DB portion of the PC2SMS Service, which was created to prevent potential recipients from receiving multiple copies of the Welcome Message within the opt-out period. (Doron Decl. ¶¶ 8-9; Boyajian Decl., Ex. 1 (Doron Depo. 34:21-35:4), ECF No. 134-4.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–24. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the

nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his or her pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56 (1963)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Yahoo asserts that it is entitled to summary judgment on Plaintiff's TCPA claims because text messages sent through its PC2SMS service are not sent using an "automatic telephone dialing system" ("ATDS") as defined under the TCPA, but rather, require "human intervention." (ECF No. 134-1 at 9.)

"The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)). In particular, the TCPA makes it illegal:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> . . .

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added). The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Ninth Circuit has upheld the Federal Communications Commission ("FCC") interpretation that a text message is considered a "call" within the meaning of the TCPA. *Satterfield*, 569 F.3d at 954. In July 2015, the FCC ruled that Internet-to-phone text messaging technology is a type of autodialer under the TCPA. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 FCC Rcd. 8017 (2015).

Since the statute's passage in 1991, the FCC has issued regulations expanding the statutory definition of an ATDS, and this Court is bound by those rulings under the Hobbs Act.[1] In 2003, the FCC was asked to determine whether predictive dialers fell within the scope of the TCPA's definition of automatic dialers and it concluded that they did because they retained the same basic function—namely, "the capacity to dial numbers without human intervention." *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14092 (2003). The FCC affirmed this decision in 2008. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559 (2008); *Hernandez v. Collection Bureau of Am., Ltd.*, No. SACV-13-01626-CJC,

---

[1] Under the Hobbs Administrative Orders Review Act, "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of– [] all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C.A. § 2342(1); *F.C.C. v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984). "Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." *ITT World Commc'ns, Inc.*, 466 U.S. at 468; *US W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002) ("The Hobbs Act, 28 U.S.C. § 2342, requires that all challenges to the validity of final orders of the FCC be brought by original petition in a court of appeals . . . the district court thus lacked jurisdiction to pass on the validity of the FCC regulations").

2014 WL 4922379, at *2 (C.D. Cal. Apr. 16, 2014). In 2012, the FCC again revisited the definition of an ATDS and explained that the Commission has emphasized that the term ATDS "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 n.5 (2012).

Applying the FCC's definition of ATDS, Yahoo argues that the undisputed facts show that the PC2SMS Service does not have the capacity to send any messages without human intervention. (ECF No. 134-1 at 9.) As set forth above, the "human intervention" language is drawn from the FCC's 2003 Report and Order wherein it interpreted an ATDS as having "the capacity to dial numbers without human intervention." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14092 (2003). However, in its most recent Ruling and Order, the FCC **rejected** the "argument that the Commission should adopt a 'human intervention' test by clarifying that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7976 (2015). Instead, the FCC instructed that "how the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id.* at 7975.

Consideration of the "human intervention" element requires an understanding of how PC2SMS operates and determining to what extent human intervention is the impetus for the transmission of the challenged text. Initially, this inquiry entails a determination of whether there are one or two separate texts. Defendant lumps both the original user text and the Yahoo informational text together as one inseparable text. According to Defendant, an informational Welcome Message is appended to the

sender's personalized message when a Yahoo user sends a text message to the consumer's cell phone for the first time through the PC2SMS system. (Dkt. 134-1 at 7.) Plaintiff responds that, in fact, the Welcome message is a separate message prepared by Yahoo and sent automatically to consumers using cell numbers that are captured and stored by the Yahoo platform. (Dkt. No.152 at 27.) As proof of this claim, Plaintiff points to the fact that the Welcome Message received by Ms. Pathman was received before the two user messages were received. *Id.* At the motion hearing, Yahoo acknowledged that the Welcome message is sent as a separate text because of the character limits for text messages. The Court finds that a jury could find that there are two separate and individual texts, the user text to the consumer and the Welcome text which is sent automatically by Yahoo as a separate text message.

As to the Welcome text, Defendant argues that the evidence shows that the PC2SMS platform depends upon human intervention by the Yahoo user to send this text. Defendant asserts that the Welcome text is made possible by the user's input or selection of the recipient's cell number from the user's Yahoo contact list stored on a Yahoo server and that, as a result, the PC2SMS cannot qualify as an ATDS.

Plaintiff responds that the Welcome text is sent without human intervention and is automatically dialed and sent by the PC2SMS according to a system of metrics designed by Defendant. The Yahoo platform automatically checks to see whether a mobile number has previously received a text via the PC2SMS service within the opt out period, if it has not, the Welcome text is automatically generated and sent. (Choudhary Decl. ¶ 8; Doron Decl. ¶ 7.) Further, Plaintiff points to evidence that the Yahoo user did not ask Defendant to send the Welcome text, know that it would be sent, or approve the informational text. Lastly, Plaintiff has provided proof that Defendant, and not the user, composed the contents of the Welcome text that was automatically delivered. *Cf. Johnson v. Yahoo!, Inc.*, Case No. 14–2028, 2014 WL 7005102, at 5 (N.D. Ill. Dec. 11, 2014) ("When a user sends a personalized message to a contact, it is clear that that transmission involves human intervention."); *Derby v.*

*AOL, Inc.*, No. 15 CV 00452 RMW, 2015 WL 3477658, at *3 (N.D. Cal. June 1, 2015) (No ATDS where personalized text messages, composed by individual AIM users, were sent to numbers chosen and manually inputted by the users).

To support its position, Yahoo relies on district court cases, which have held that where a message must be "triggered" by human intervention, the system is not an ATDS. (ECF No. 134-1 at 8-12 (*citing Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015), *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014), *Modica v. Green Tree Servicing, LLC.*, No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015), *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014), and *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015)). Each of these cases was decided prior to the July 2015 FCC rule making decision, and involve distinguishable fact patterns with varying amounts of human intervention by the platform user and actual sender of the text message.

Of these cases, *Glauser* is most analogous to the present case. In *Glauser*, the court adopted Yahoo's view that a user unintentionally triggering unsolicited text messages qualifies as human intervention. The application at issue in *Glauser* was a group messaging application, which allowed users to create a group and then send text messages to all group members at the same time. *Glauser*, 2015 WL 475111, at *1. The alleged TCPA violation was based on the plaintiff's receipt of two text messages welcoming him to a poker group after the group's creator entered the plaintiff's mobile number into the GroupMe application. *Id.* Plaintiff argued that the group creators never asked GroupMe to send the Welcome Texts, did not send the messages themselves, and were never informed that the messages would be sent. Once the numbers were obtained by GroupMe, the "entire process was automated," and "[n]o human intervention was needed or involved." In granting GroupMe's summary judgment motion, the court found that the poker group's creator triggered the welcome texts by entering the plaintiff's telephone number and that this human intervention

precluded a finding that the application was an ATDS. *Id.* at *6-7.

First, *Glauser* is distinguishable because it was decided before the July 2015 FCC order which backed away from the "human intervention" element by rejecting the argument that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention. 30 F.C.C. Rcd. 7976. In addition, *Glauser* applies a "but-for" type of analysis which focuses on the triggering event leading up to the offending text. This form of analysis was rejected by another district court that considered the "human intervention" issue in the context of the Yahoo PC2SMS platform. In *Johnson v. Yahoo!*, the court observed that "[a] person will always be a but-for cause of any machine's action, and therefore, I conclude that the FCC's 'human intervention' gloss on the statute requires more than but-for causation." *Johnson v. Yahoo!*, 2014 U.S. Dist. LEXIS 171325, *17 (N.D. Ill. Dec. 11, 2014). The Court agrees. The Court finds that but-for analysis is inconsistent with the July 2015 FCC instruction to apply a case-by-case analysis to how the human intervention element applies to a particular type of equipment.

Reviewing the evidence in the light most favorable to the Plaintiff, the Court finds that there are genuine issues of fact as to whether the PC2SMS system is an ATDS. A reasonable jury could conclude that the Welcome text is produced and sent by an ATDS as the term is defined in the TCPA.

## CONCLUSION

For the foregoing reasons, Yahoo's second motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

DATED: December 14, 2015

HON. GONZALO P. CURIEL
United States District Judge